CATHERINE RAJNOWSKI v. THE DETROIT, BAY CITY & ALPENA RAILROAD COMPANY.

[See *post*, 20.]

*Negligence—Railroad companies—Defective locomotive—Fires—Evidence—Interpreters.*

1. Where, in an action brought to recover damages arising out of the alleged burning of plaintiff's house by sparks from a locomotive belonging to the defendant, there was very strong testimony to the effect that the engine was in perfect order, and

properly managed, and that no such scattering of fire as was charged was probable or possible, but there was, on the other hand, testimony equally positive of such an escape of fire as indicated both a defective spark-arrester and careless management, the Court is not authorized to disturb a verdict as contrary to what we might possibly believe, if called on to decide, the facts.

2. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

a—Experience has shown in public as well as in legal business that great mischief has followed from incorrect interpretation.

b—The danger of mistakes in legal proceedings is such that nothing but practical necessity can justify the intervention of an interpreter between counsel and witness or witness and jury, although it is well settled that on a proper occasion it is allowable, and the occasion must usually be judged of by the trial court.

c—The rules of law excluding improper forms of questions, and hearsay and otherwise improper testimony, and making inadmissible leading questions and other devices for getting in what should be kept out, are as important in case of interpreters as anywhere else.

d—It is necessary, for the due course of examination, that the interpreter shall give to the witness the precise form and tenor of each question propounded, and no more or less, and that he shall in like manner translate the precise expressions of the witness.

e—The same policy which provides official short-hand reporters would be supplemented by competent and permanent translators and interpreters.

Error to Alpena.   (Kelley, J.)   Argued January 29 and 30, 1889.   Decided February 8, 1889.

Case.   Defendant brings error.   Affirmed.   The facts are stated in the opinion.

*A. M. Henry* (*J. C. Shields,* of counsel), for appellant.

*Cobb & Currier* (*Depew & Rutherford,* of counsel), for plaintiff.

CAMPBELL, J.   This is one of two cases brought to recover damages arising out of the alleged burning of

plaintiff's house by sparks from a locomotive belonging to and run by defendant. This case is for the loss of furniture burned, and the other for the death of a child. There are some differences in the facts set forth in the two records, but none that in this proceeding in error we can notice. Plaintiff recovered $192 as the value of the furniture when burned, which seems to have been the only value shown. The facts in dispute related chiefly to the condition of the locomotive as to security against scattering sparks, as well as to its management, and also to the real cause of the fire, as caused by the engine, or as started from something within the house itself, and not from outside. Some claim was also set up of contributory negligence in allowing the furniture to burn up.

The declaration is criticised, but we do not discover it has any failure to charge negligence, both as regards the condition of the locomotive, and as regards its management. And the charge of the court was sufficiently careful as to the circumstances under which liability would exist for the burning. And we do not think that the charge, fairly construed, allowed the jury to resort to any knowledge peculiar to any of them of material facts. What the court meant, and what they would naturally understand was meant, was no more than this: That the jury should apply to the testimony and the facts their own general intelligence and knowledge of affairs. This all sensible men are bound to do.

There was very strong testimony to the effect that the engine was in perfect order, and properly managed, and that no such scattering of fire as was charged was probable or possible. But there was, on the other hand, testimony equally positive of such an escape of fire as indicated both a defective spark-arrester and careless management. In such a conflict, we are not authorized to

disturb a verdict as contrary to what we might possibly believe, if called on to decide, the facts. The case certainly presents some peculiar features, but we are unable to see that there was not testimony legally competent to lead to a verdict, if believed, as it seems to have been. Neither, in our opinion, is there anything in the record which would justify us in taking the question of contributory negligence as one to be decided for defendant. There was testimony for the jury to be passed upon. The language of the court does not, so far as we can see, violate any rule of law, so as to give defendant any sufficient ground of reversal. So far as the record shows, if injustice was done, it was on questions of fact. We find no errors on which to reverse the judgment, and it must be affirmed.

But this case, although we have no right to assume it was open to suspicion, has brought to our attention some defects in the practice for which the circuit court is not responsible, and which seem to us important enough to point out. In numerous contested cases, involving claims for damages from negligence, as well as in other causes, the testimony has been taken by means of interpreters. In very many instances the conflict of testimony is such as to indicate either more perjury than seems possible, or more likely incorrect renderings of testimony. Experience has shown in public as well as in legal business that great mischief has followed from incorrect interpretation. In several parts of our State the numbers are large of persons not familiar enough with our language to speak or comprehend what others say to them. This makes it necessary to employ the help of those who are supposed to understand both languages, and to be capable of transmitting correctly from each to the other all that is said by either person dealing with another. But the danger

of mistakes in legal proceedings is such that nothing but practical necessity can justify the intervention of an interpreter between counsel and witness or witness and jury, although it is well settled that on a proper occasion it is allowable, and the occasion must usually be judged of by the trial court. The rules of law excluding improper forms of questions, and hearsay and otherwise improper testimony, and making inadmissible leading questions and other devices for getting in what should be kept out, are as important in case of interpreters as anywhere else. It is necessary, for the due course of examination, that the interpreter shall give to the witness the precise form and tenor of each question propounded, and no more or less, and that he shall in like manner translate the precise expressions of the witness. As it is not supposed that court, counsel, and jury can follow him in the foreign language, it is obvious that if he undertakes— as is too often done—to expound things to the witness in his own fashion, or to have any conversation with him beyond strict translation, no one can tell how far the testimony is reliably genuine, or how far it consists of what is admissible. It often happens that the chance interpreter who is picked up is ignorant, or otherwise not the right person, and that he takes liberties with both questions and answers. All who have had experience in trials have found serious evils inevitable under our present system of chance and temporary appointments, and have found themselves powerless to prevent mischief, intended or unintended. If stenographers could take down what is said by interpreters and witnesses in other languages, it might furnish some help, by giving means of resorting to other translators to test their accuracy. But this is also impracticable, and the stenographer's minutes contain the questions in English, and the interpreter's English rendering of the answers, with no means

of judging the correct report of either, as between inter-
preter and witness.    In other countries, and possibly in
some parts of our own country, there are competent
official interpreters of known ability and integrity attached
to the court itself, or assignable where needed.    The same
policy which provides official short-hand reporters would
be supplemented by competent and permanent translators
and interpreters.    We have seen so many instances in
the records before us of testimony which appeared of ques-
tionable accuracy that, while it is beyond our power to
correct the evil, we deem it proper to advert to the occa-
sion for having it corrected, if possible.    It is not for
us to do more than call attention to it.

The other Justices concurred.