CHARLES REIFSNYDER, Appellee, v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

Accident in Railroad Yard: CONTRIBUTORY NEGLIGENCE, WHAT IS NOT. A driver, with the knowledge of defendant's employees, loaded a car belonging to the Chicago, Burlington & Quincy Railway Company. There was a narrow space between the car and defendant's switch track not wide enough for a team to be turned around in, which passage was generally used by persons having business with defendant. The loading was done on that side of the car next to the narrow passage mentioned. It could have been done on the other side of the car, where there was an open space about forty feet wide, but that space was muddy. There was no positive evidence that the driver had seen switching being done on defendant's tracks, that day, or that he could have seen it from where he worked. There was nothing to show that he had any reason to think that his team would frighten. He was driving along said narrow passageway to the street when a car, moving along defendant's track, frightened his team, and the track on the opposite side of the way being filled with cars, it turned across defendant's track in front of the car, and was killed. *Held*, that a finding that the driver was free from contributory negligence, will not be disturbed. (1)

SUFFICIENT PROOF OF NEGLIGENCE. A finding that it is negligence not to place a brakeman on cars making a flying switch in a private yard frequently used, with defendant's consent, by persons having business with it, will not be disturbed. (3)

EXPERT TESTIMONY. Expert testimony may show that the proper position of a brakeman on a car making a flying switch is at the brakes. (4).

*Appeal from Wapello District Court.*—HON. H. C. TRAVERSE, Judge.

TUESDAY, JANUARY 30, 1894.

ACTION to recover for damages to a team, wagon, and harness. Trial to a jury. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*McElroy & Roberts* for appellant.

*W. H. C. Jaques* for appellee.

KINNE, J.—I. The testimony shows that the ground where the accident happened is bounded on the east by Jefferson street, on the south by the Des Moines river, and on the west by Greene street. A plat attached to the abstract shows that Greene street is on the east, and Jefferson street on the west; but this is a mistake, as appears from the testimony of all of the witnesses. The action is brought to recover damages to the team, wagon, and harness of plaintiff. The following facts are either admitted in the pleadings or established by the evidence: The accident occurred on the switch and depot grounds of defendant, in the city of Ottumwa, and on defendant's track. These grounds lie between the depot grounds of the Chicago, Burlington & Quincy Railway Company and the Des Moines river, and access is had to them by passing down either Greene or Jefferson street. These streets run parallel with each other, and are about four hundred feet apart, and cross the grounds of both railway companies at right angles. At the time of the accident, plaintiff's team was in charge of a young man nineteen years old. This man and plaintiff's son had during the day been hauling bones in a wagon, and loading them into a car belonging to

the Chicago, Burlington & Quincy Railway Company, standing upon its transfer track, at a point from forty to one hundred and ninety-eight feet west of Jefferson street. The men had been loading from the south side of the car, next to the depot and switch grounds of the defendant. The space where the unloading was going on was not wide enough to permit the team to turn around. There was a clear space about forty feet wide on the north side of the car, which extended from Greene to Jefferson street. The car could have been loaded from that side, but it seems that the ground there was muddy, and filled in with fresh earth. The evidence is not clear as to the direction the man had come from into this narrow space with prior loads,— whether from Greene or Jefferson street. Defendant's switches were east and west of the place where the bones were being loaded into the car. It appears, also, that defendant did all of its own switching for its city business, and also switching for the Wabash Railway Company, on these grounds. Before the man drove his team away from the car where he was loading bones, defendant's employee's had been engaged in switching cars; and, as near as can be gathered from the evidence, this switching had been going on west of Greene street. After the man had unloaded the bones, he started his team west, along the south side of the transfer track, through a passageway too narrow to turn around in, yet wide enough to drive through to Greene street. This passageway was frequently used by 'buses and drays to reach Greene street. As the man was driving along this narrow way, he met a car coming down the main track of defendant; and when it came within ten or twenty feet of his team the horses took fright, and as the transfer track on the north side was filled with cars, so that they could not go across it, they turned south, across defendant's track, and in front of the moving car, and were caught and killed. There is no positive

evidence that the man in charge of this team had seen any switching going on there the day of the accident. Indeed, it appears that the switching was done only from 3:15 to 4:30 o'clock P. M. It also appears to be doubtful if the man in charge of the team could have seen much of the switching, as nearly all of it was done west of Greene street. The car that killed the horses had been kicked back toward the team. As to whether or not an employee of defendant was on the car and applied the brake before the horses were struck, is a matter upon which the testimony is conflicting.

II. It is said that plaintiff's driver was guilty of negligence which should defeat a recovery. The jury specially found that the driver did not know, and by the exercise of ordinary care could not have known, that switching was being done in defendant's yards, where the accident occurred, at the time of the accident; that the place was not a dangerous place in which to drive teams; and that the driver did not know, and could not have known by the exercise of ordinary care, that it was dangerous to attempt to drive where he did; and that he was not negligent in so doing. It is said that the evidence does not sustain these findings. There is no direct evidence that the driver knew that any switching was being carried on at that time in these yards. As a matter of fact, switching was being done there, but it appears that most of it was west of Greene street, where he could not see it. But, even if he did see it, it does not follow that he had no right in there. He was loading a car, and using the passage, as he had a right to do. The use of this passageway is shown to have been quite general by persons having business with these railroad companies. He was not a trespasser upon the railroad grounds, but there with the knowledge of the defendant's servants, and, it may be said, with their consent, inasmuch as no protest was made against his being there. The mere fact of his being

there would not show negligence. The question of plaintiff's driver's negligence in going into this passageway was properly submitted to the jury, and they found against the defendant. It may be that, sitting as jurors, we should not have found as the jury did, as to all these matters; but the evidence was sufficient to sustain the findings, and we must, therefore, say that plaintiff or his driver was not negligent. From its frequent use, the passageway appears to have been safe enough, under ordinary circumstances, if a team did not frighten. There is nothing to show that the driver had any reason to think that the team would frighten.

III. It is contended that the defendant was not negligent; that it owed no duty to plaintiff to keep a man on a car which was being kicked back over its tracks in its own private yards. Plaintiff's contention is that it appears from the evidence that no brakeman or switchman had set the brake before the car struck the horses; that, had there been a brakeman at the brake on the car when it was kicked back towards his team, he could and would have stopped the car, and prevented the accident. A ground of negligence, in the petition, is that this car was kicked back without any one in charge or control of it. This is put in issue by the defendant's answer. We are not prepared to hold that a railway company may switch cars, even at the rate of four miles an hour, in its private yards, where its employees know, or have reason to expect, that the drivers of teams may be lawfully between the tracks, without having an employee ride such cars. Whether they owed a duty to plaintiff to have a man on top of this car which had been kicked back would depend upon circumstances surrounding the accident. They knew that this man was in there with this team. At least, several of the defendant's employees knew it. They knew that this passageway was used frequently by persons driving teams, and having business with

these companies. Knowing of the frequent use of this passageway, the defendant's employees might naturally anticipate that someone would be in there, and in this case they actually knew that plaintiff's team and wagon were in the passageway. Knowing such facts, and after consenting to such a user of the passageway by the public, it was a proper question to submit to the jury as to whether, in view all the facts and circumstances surrounding the accident, defendants were negligent, in not having a brakeman ride the kicked car. The jury found, and properly so, that the defendant was negligent, and we are not warranted in disturbing their finding. While there is, as we have said, some conflict in the evidence, still the jury were warranted in finding that the car was not ridden by a brakeman; that he did not get on top of it in time to apply the brake before the car struck the horses. Other evidence was introduced, which was not contradicted, showing that, if a brakeman had rode the kicked car, he could have stopped it within a distance of from fifteen to sixty feet from the point where the brake was applied.

IV. Plaintiff asked witness Crowley, an experienced brakeman, this question: "Suppose a car is kicked down the track from about Greene street toward Jefferson. There is no circumstance to call the brakeman's attention to any particular effort on his part. That he is riding a car down there. Ordinarily, where would be his position on the car?" To which the witness answered: "The proper place for a brakeman is to be right at the brake. That is what he goes on the car for; to look ahead, and be a-hold of the brake, and be ready." Allen, an expert brakeman, was asked this question: "Suppose a brakeman is riding a car down there. There is nothing extra to call his attention elsewhere. He is on the car for the purpose of riding it down. The brake is on the front end of the car. At what place had the man ought to be, for the

performance of his duty?" He answered: "Well, his place would be at the brake." These questions were objected to as calling for incompetent evidence. The objection was overruled, and appellant assigns this ruling as error. These questions inquired for the proper position of a brakeman when riding a car. Counsel for appellant cite several cases differing in facts from that at bar. where it was held that expert evidence was not admissible. Would it not be permissible, in a proper case, to .show that the post of an engineer was on the right-hand side, in-the cab of the engine, and that of the fireman on the left-hand side? Would it be error to permit a witness to testify as to the proper place of a front or rear brakeman on a train? If not, how can it be said to be error to permit a witness to testify that a brakeman's position, when riding a car, is at the brake? We see no objection to the questions. As a general rule, it is allowable to show the proper location of a trainman on a moving train or car. In *Railroad Co. v. Smith*, 22 Ohio St. 246, it is said: "What is a proper and what an improper place for the brakeman on the train, may be shown by a witness skilled in the business." No question is made as to the competency of these witnesses by reason of their skill and experience to testify as to the matter inquired about. The evidence sufficiently sustains the verdict, and the judgment below must be AFFIRMED.