## THE CITY OF TOPEKA V. MARY NOBLE.

### No. 578.  (58 Pac. 1015.)

1. PERSONAL INJURY—*Defective Area Way*—*Evidence.*  Alleged errors in the admission and exclusion of evidence examined.  *Held*, (1) that the evidence admitted was competent; and (2) that the evidence excluded was either incompetent and properly excluded, or that the error in rejecting the offered evidence was cured by the findings of fact in favor of the defendant upon the contention in support of which the evidence was offered.

2. ——— *Instructions.*  Instructions given and refused examined.  ·*Held*, that upon the whole the court properly instructed the jury as to the law applicable to the case on trial.

3. ——— *Special Findings of Jury.*  Where the jury answer special questions submitted, "Do n't know," "We do not know," "Board defective, but time not known," such answers are in legal effect findings in the negative upon such questions, and a motion that the same be made more specific, definite and certain was properly overruled.

4. ——— *Inconsistency—Material Issue.*  A special finding, in order to overcome a general verdict, must be upon a substantial material issue and inconsistent with the general verdict.

5. ——— *Defective Area Way—Incomplete Finding.*  In an action for personal injury alleged to have been sustained by reason of a defective area way, or a defective door in such area way, a special finding by the jury that there was no patent defect in the particular board which caused the injury, in the absence of any finding as to whether the door or area way was defective, dangerous, or unsafe, will not necessitate a reversal of the judgment.

Error from Shawnee district court; Z. T. HAZEN, judge.  Opinion filed November 1, 1899.  Affirmed.

*W. A. S. Bird,* city attorney, for plaintiff in error.

*W. R. Hazen,* and *D. H. Branaman,* for defendant in error.

The opinion of the court was delivered by

McELROY, J.: This action was brought by Mary Noble against the city of Topeka to recover for per-

sonal injuries alleged to have been received by her in falling through a trap-door on the west side of Kansas avenue, near Thirteenth street. The petition contained the usual averments. The answer consisted of a general denial and contributory negligence. A trial was had before the court and a jury, resulting in a verdict and judgment for the plaintiff and against the defendant city for the sum of $500 and costs of suit. Motion for a new trial was overruled. The defendant, as plaintiff in error, presents the case to this court for review, and alleges error in the proceedings of the trial court. We will take up the specifications of error in the order in which they are presented.

*First.* That the district court erred in admitting incompetent evidence. There are fourteen specifications of error argued under this assignment, but there is little, if any, merit in this contention. There are no questions presented by these specifications which deserve special comment. Most of the testimony was competent and properly admitted, but some of it was incompetent and was afterward taken from the jury by the court. There is none of the evidence of which complaint is made of such character as to require a reversal of the case on account of its admission. There are nearly 300 pages of testimony, and an examination of the entire record fails to show any error in the admission of testimony.

*Second.* That the court erred in refusing to admit competent evidence offered by the defendant. Herein complaint is made, first, that the court sustained an objection to a question propounded to witness Rogers, as follows: "Q. As a matter of fact, were not these area ways between the brick walk and the street used for the purpose of putting coops and things of that kind on?" Whatever error, if any, was committed in

Topeka v. Noble.

refusing to permit the witness to answer this question was harmless. The witness was afterward permitted to answer the same question and many others similar, all tending to establish the fact sought to be established by an answer to this question. And, second, Doctor Munn, a physician and surgeon, was asked the following question, to which an objection was made and sustained: "Q. State if, under the testimony given by plaintiff, in your judgment, you think it is possible that the child she was carrying at the time of the injury could have been injured to such an extent that it would have shown the injury at the time of its birth." The injury to plaintiff occurred on the 13th of May, 1895; the child was still-born on the 21st day of June thereafter. The jury, in reply to a special interrogatory, answered that they could not tell whether the death of the child was produced by reason of the fall plaintiff received or not. The defendant at the trial contended that the death of the child was not the result of the injury. The answer to this question by the jury was equivalent to a finding upon the question as contended for by the city; hence the city was not injured by the exclusion of the evidence, and no reversible error can be predicated upon this ruling of the court.

*Third.* That the court erred in instructing the jury, as follows:

" (1) In order to charge the defendant with negligence and subject it to liability in this case, it must appear from the evidence not only that the sidewalk was defective at the time of the alleged injury, but it must further appear that such defect was actually known to the city through some of its officers or agents, or that the defects had existed for such length of time prior to the alleged injury that the city, if exercising ordinary care, would or should have known

of the defect and had an opportunity to repair it. (2) There can be no liability on the part of the defendant unless there was neglect of duty in respect to the maintenance of the sidewalk on the part of the officers of the city, and there can be no such neglect of duty unless you find from the evidence that the officers of the city knew of the defective condition in the walk complained of, or that the defect had existed for such length of time that the officers of the city, with reasonable diligence, could have known of this condition long enough before the accident occurred to repair it. . . .''

The objection to the above instructions is that the jury are informed that if the defect in the street or area way was known to the city through some of its officers or agents that would fix a liability upon the city ; that the instructions are misleading, for the reason that there are many officers and agents of a city to whom notice of a defective or dangerous street or sidewalk would not be notice to the city ; for instance, the fire marshal, food inspector, superintendent of the electric-light plant, city attorney, or treasurer ; and that, in order to fix a liability upon the city for injuries received by reason of a dangerous or defective street or sidewalk, the notice must be brought home to some executive officer of the city whose duty it is to repair or remedy the defect, or who has authority to cause it to be done. . Authorities are cited in support of this contention.

The criticisms upon these instructions might be just if these were the only instructions upon the question under consideration.    The court further instructed the jury upon the question of notice of the defective or dangerous condition of the street or area way as follows :

''I further instruct you that a corporation acts by and through its officers, and the notice referred to in

these instructions has reference to some officer or agent having authority to act on behalf of the city with reference to the subject of the notice. As explained in these instructions, before you find negligence you must be satisfied that the city had notice of the defect complained of in plaintiff's petition, or had knowledge of facts sufficient to put it upon inquiry long enough before the injury to have repaired the alleged defect. Negligence implies some omission of duty. The city must have been in fault. And if it had no knowledge of any defect, or of any facts from which it might reasonably have presumed that there was a defect, it is not to blame, and cannot be said to have been guilty of negligence."

The instructions as a whole are not open to the objection urged by plaintiff in error. The attention of the jury was directed to the particular class of officers and agents whose knowledge would constitute notice to the city.

*Fourth.* That the court erred in refusing to give instructions requested by the defendant. The defendant asked the court to submit to the jury nine instructions. There is no proposition of law contained therein applicable to the evidence upon the trial of the case which was not given in the general charge to the jury — at least the plaintiff in error fails to point out any such propositions, and we conclude there is none. The instructions requested by the defendant were properly refused.

*Fifth.* That the court erred in overruling the defendant's motion to require the jury to make its answers to certain special findings more specific, definite, and certain. The court, at the request of the parties, submitted certain special questions to be answered by the jury, some of which they answered as follows: "Do n't know"; "we do not know"; and "board defective, but time not known." These answers are

equivalent to a finding in the negative ; therefore such answers are specific, definite, and certain.    When a jury in answer to a special question says that it does not know, it simply answers the question in the negative.    (*Railroad Co. v. Swarts*, 58 Kan. 235, 48 Pac. 953.)    The court very properly refused to have the answers made more definite and certain.

*Sixth.*    That the court erred in overruling plaintiff in error's motion for judgment upon the special findings of fact.    The special findings which plaintiff in error insists are in conflict with the general verdict are as follows :

"Ques. 20.    Are the injuries received by plaintiff permanent ?    Ans. We do not know.

"Q. 21.    Was the death of the unborn child produced by reason of the fall plaintiff received on the 13th day of May, 1895 ?    A. We do not know.

"Q. 22.    If you answer 21 in the negative, you will then answer what produced the death of the said unborn child.    A. We do not know."

"Q. 1.    Was the board that broke with the plaintiff at the time of the accident broken prior thereto, or was it broken by the weight of the plaintiff ?    A. Broke by plaintiff's weight."

"Q. 3.    Was there a patent defect in the board prior to the time of the accident ?    A. No."

"Q. 7.    Is it not a fact that in front of the building where the accident happened the city had constructed a good, solid, substantial sidewalk, ample and sufficient for all purposes, and that from said brick sidewalk the owner of the premises had constructed a good, substantial iron approach from the walk to the door of the building ?    A. Yes."

"Q. 9.    Is it not a fact that the trap-door upon which the accident occurred was wholly outside of the sidewalk constructed in front of the building and no part of said sidewalk at all ?    A. Outside of brick walk, yet used by pedestrians.

"Q. 10.    Is it not a fact that at the time plaintiff

was injured on the trap-door she had voluntarily left the sidewalk, and as a matter of her own volition and convenience was crossing the trap-door as a short cut to the store door, instead of using the regular approach or entrance to the store that was used by people generally?  A. Yes.

"Q. 11. What officer or agent of the city, if any, had actual notice that the board that caused the accident was unsafe or defective prior to or at the time of the accident.  A. None.

"Q. 12. If you find that the board that broke was rotten or defective, then state how long said rotten or defective condition had existed prior to the time of the accident?  A. Board defective, but time not known.

"Q. 13. Was the door on which the accident occurred constructed by the city for the benefit of the public, or by the owner of the adjacent building for the convenience of the occupants of said building? A. For convenience of occupants."

The argument upon this contention is based upon the assumption that the city had no notice of the defects in the street or area way where defendant in error was injured.  A very casual examination of the record discloses the fact that there was a defect in the area way as maintained in the street at the time and place where the plaintiff was injured, and that she sustained some damage by reason thereof.  The principal contention at the trial of this case in the court below was that the city had no notice of any defect at the place where the accident occurred.  This is the real question in the case.

Upon the question of notice there are two inquiries of importance:  (1) Whether the city had actual notice ; and (2) whether the defect remained a sufficient length of time to bind the city without actual notice. It is contended on the part of plaintiff in error that the jury found that the city had no actual notice of

the defect.   We are unable to point out any finding of fact returned by the jury which will justify this assumption.   It is true that the jury found that the city had no notice that the board was defective ; that is, the particular board that caused the injury.   They also found that there was no patent defect in that particular board ; however, there was no general finding that the city had no notice that the area way was defective, or that there was no patent defect in the area way or in the door thereof.   The parties who were repairing sidewalks, and whose business it was to repair walks, knew that this particular area way was defective.   A member of the city council knew that it was defective.   The findings of the jury only go to the extent that such officers did not know that this particular board was defective — the board that caused the injury.

There was no question as to plaintiff's being injured, or that the area way where the injury was sustained was defective, or that the defect had existed for such a length of time that the city should have known of its dangerous condition.   This area way had been in a dangerous condition for a long time.   From what we have said, it follows that the motion for a new trial was properly overruled.

The judgment of the trial court will be affirmed.