## REEVES v. CHICAGO M. & ST. P. RY. C.

Plaintiff, in an action for injuries, having already detailed all the facts as to his then physical condition, it was not error to permit him to answer questions as to whether the injury to his head had any effect on his doing business, whether he had recovered from the effects of the accident, and whether he was able to carry on business on account of his injuries, over an objection that the questions called for conclusions.

In an action for injuries to a passenger by a collision between two parts of a train which had broken in two, a witness was asked whether he noticed anything peculiar when the train rounded a certain curve. The witness answered, after the overruling of an objection, that he noticed there seemed to be quite a separation between the coach and the cars in front. **Held,** that, though the question was improper in form, the answer contained nothing but a statement of the conditions observed by the witness, and that the ruling was therefore nonprejudicial.

In an action for injuries to a passenger by a collision between two parts of a train which had broken in two, questions asked of the engineer and fireman as to whether there was anything different or unusual in the manner they operated the train at the time was immaterial.

A special finding by the jury of the precise acts or omissions constituting negligence is equivalent to a finding against plaintiff as to all other acts of negligence alleged or which might properly be proved.

Under the statute providing for a special verdict, the special findings control the general verdict.

Silence of special findings on any material fact to be found must be taken as a finding against the party having the burden of proof.

Where the special findings negatived any negligence in making up the train by the breaking of which plaintiff, a passenger, was injured, defendant was not prejudiced by an instruction that the law requires persons in charge of a train to use the utmost care and diligence in making up the train.

That a mixed freight and passenger train on which plaintiff was riding as a passenger had broken in two, and that the collision of the parted sections caused injury to plaintiff, raised a presumption of the carrier's negligence.

A witness who had been employed as a railroad conductor both on freight and passenger trains for 25 years, and was well acquainted with the duties of a conductor and brakeman on a freight train, was competent to testify as to the proper place for the rear brakeman of a mixed train as it was approaching a station.

On an issue as to whether the rear brakeman on a mixed train on which plaintiff was riding was in his proper place just

prior to plaintiff's injury in a collision between two parts of the train which had broken in two, the brakeman having testified that he was on the platform of the caboose which was his proper place, evidence of an expert railroad conductor that the proper place for the rear brakeman on such a train under similar circumstances was on top of the train was admissible in rebuttal.

An objection that a question asked an expert did not refer to the testimony of the witnesses on the trial or require the witness to assume the truth of the testimony, not made at the trial, will not be considered on appeal.

Plaintiff was injured by a collision between two parts of a mixed train which had broken in two, caused by the slackening of speed of the part attached to the engine as it approached a station. None of the operatives of the train were aware that it had broken in two until the collision, and the jury found that this was due to the fact that the operatives were not in a proper position to view the train just prior to the accident, and, if they had been they could have prevented the accident by setting the brakes on the broken portion. **Held,** that the negligence of the operatives in not remaining in a proper position was the proximate cause of the accident.

Where certain instructions, not wholly free from criticism as a whole, charged that the jury should take into account the evidence and apply to it their judgment and experience as men, they were not objectionable as misleading.

(Opinion filed, Nov. 10, 1909.)

Appeal from Circuit Court, Davison County.    Hon. FRANK B. SMITH, Judge.

Action by M. A. Reeves against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Preston & Hannett,* for appellant.

Matters concerning, which the jury can form an opinion, as intelligently as can the witness, are inadmissible in evidence. Neilson v. C. etc. Ry. Co., 59 Wis. 516; Watson v. Ry. Co., 57 Wis. 332. Whether there was anything unusual in the appearance of a mail train at a railway crossing is a conclusion and not a fact. Western R. of Ala. v. Clegghorn, 39 Co. 133. Where the facts may be clearly shown and understood, expert evidence is not admissible. Sumner v. Sumner, 45 S. E. 509; Kerrigan v. Market St. Ry. Co., 71 Pac. 621. Opinion evidence is admissible only when because of the complexity of the elements involved it

is impossible for the witnesses to detail all the circumstances, which lead the mind to a particular conclusion. Allison v. Wall, 49 S. E. Rep. 831. Expert testimony is not admissible unless the jurors themselves are not capable of drawing correct conclusions from the facts proven. Stumor v. Shaw, 6 Am. St. Rep. 412; Hurst v. Kahsas· City Ry. Co, 85 Am. St. Rep. 539; Dougherty v. Milliken, 79 Ame. St. Rep. 609-613; Hammond v. Woodman, 66 Am. Dec. 243. In order to justify the trial court in submitting this case to the jury there must be evidence in the record, from which the jury may reasonably draw the inference that the neglect of duty on the part of the train crew, was the cause of the injury. Railyway v. Stebbling, 62 Md. 504; Hayes v. Railroad Co., 111 U. S. 228; Railway v. Blackman, 63 Ill. 117; Railway v. Taylor, 104 Pa. 306; Hollman v. Railway Co., 62 Mo. 562; Railway Co. v. Pierce, 33 Kan. 61; Wallace v. Railway Co., 74 Mo. 594. When the evidence is undisputed, and is such that different conclusions or inferences cannot reasonably be drawn therefrom, it is the duty of the court to declare its legal effect. Harrison v. C., M. & St. P. Ry. Co., 6. S. D. 100; McKeever v. Homestake Min. Co., 10 S. D. 599; McCormick Harvester Mach. Co. v. Faulkner, 7 S. D. 364. The instructions to the jury should be applicable to, and limited to, the evidence adduced in the cause. LeMasters v. Smith, Pac. Ry. Co., 131 Cal. 105; Rockoven v. Board of Supervisors, 13 S. D. 317; Hudson v. Northern Pac. Ry. Co., 107 Wis. 620; Liggett v. Allen, 82 N. W. 556; Blashfield on Inst. to Jurors, Sec. 86.

*F. J. Spangler,* for respondent.

A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill. Rev. Civil Code S. D. § 1534. A carrier of persons for reward is bound to provide vehicles safe and fit for the purpose to which they are put, and is not excused from default in this respect by any degree of care. Id. § 1535. The exposure of a passenger to danger which the exercise of due care and foresight would have avoided is negligence on the part of the carrier. Reem v. St. Paul City Ry. Co., 80 N. W. 638. The law

presumes that one injured while being transported by a common carrier was injured by the latter's negligence. Lincoln Trac. Co. v. Heller, 100 N. W. 197; C., B. & Q. Ry. Co. v. Wolf, 86 N. W. 441; C., B. & Q. Ry. Co. v. Winfrey, 93 N. W. 526. And when it is proven that a train parts in transit, is de-railed, or a collision occurs, or an accident of such unusual character occurs, a presumption of negligence arises against the carrier. Feldschneider v. C., M. & St. Paul Ry. Co., 99 N. W. 1035; Whittlesey v. C., B. & Q. Ry. Co., 90 N. W. 516; Pershing v. C., B. & Q. Ry. Co., 32 N. W. 488. Those who are engaged in the business of railroading come within the rule rendering admissible the opinions of those who are engaged in a particular art or trade. 1 Rice on Ev. 364; Ry. Co. v. Thompson, 75 Tex. 501. Persons skilled in the running of trains may testify as to the proper place or position for employees to take at a given time, or under certain circumstances. 5 Ency Ev. 597, note 67 and 596, note 65; Butler v. Ry. Co., 54 N. W. 208; 12 Am. and E. Ency. Law., 2 Ed. 458-470. Experts may testify as to the running and management of trains and upon questions as to railroad business not within the comprehension of men generally. 5 Ency. Ev. 594, also note 81, p. 6015; Holland v. Ry. Co., 42 Pac. 938; Cream of Law, 629, No. 567; 12 Am. and Eng. Ency. Law, 2d Ed. 536-470; Whitesett v. Ry. Co., 25 N. W. 104; Quinlan v. Ry. Co., 84 N. W. 960. A verdict will be directed for the defendant only when the plaintiff's evidence, considered as undisputed, and aided by all reasonable inferences would not support a verdict in his favor. Piric v. Gillitt, 2 N. D. 255-50, N. W. 193; Vickey v. Burton, 6 N. D. 253-69, N. W. 193; Merchants National Bk. v. Stebbins, 15 S. D. 287.

SMITH, J. Action for personal injury received by plaintiff while a passenger on defendant's railway train.

The jury returned a general verdict for plaintiff, assessing his damages at $1,500. Additional interrogatories were submitted to the jury, which with the answers thereto, were returned with the general verdict, and are as follows:

"(1) Did the train crew fail to exercise the utmost care and diligence in the making up, management, operating, or guarding

of the train which caused or tended to cause the accident? Ans. Yes.

"(2) If so, state in what such failure consisted? Ans. The conductor and rear brakeman were not in position to view their train.

"(3) Was the rear brakeman in a place at the time of the accident which the utmost care and diligence for the safety of the passengers required compatible with the kind of train being run? Ans. No.

"(4) If not, where should he have been? Ans. In front of the coach or at some point on the train where he could view it.

"(5) What could have been done by the trainmen or any of them, if anything, to have prevented the collision which is alleged to have caused the injury to this plaintiff? Ans. Set the brakes."

Judgment was entered on the general verdict, and a motion for a new trial denied by the trial court. This appeal is from the judgment and the order denying a new trial. Proper assignments of error appear in the record which are grouped and discussed by counsel in appellant's brief under five heads, as follows: First. Error in receiving evidence over the objection of the defendant. Second. Error in excluding evidence offered by defendant. Third. Error in denying motion to direct a verdict in favor of the defendant. Fourth. Error in the court's instructions to the jury. Fifth. Error in denying defendant's motion for a new trial.

On March 27, 1905, plaintiff was a passenger on defendant's train, coming from Letcher to Mitchell. The train consisted of 17 cars, the caboose being at the rear end, a passenger coach in which plaintiff and several others were riding; next to the caboose, two cars with coal; the balance of the train consisted of ordinary freight cars. The train left Letcher about 8 o'clock in the evening. The only stop made was at Loomis, a small station a little less than half way to Mitchell, where some switching was done. After leaving Loomis, the train was run at a speed of 25 to 35 miles an hour, as estimated by the trainmen. The train crew consisted of the conductor, two brakemen, and the engineer and fireman, all of whom were witnesses on the trial. The defendant's track

between Letcher and Mitchell runs in a general southerly direction until about a mile from Mitchell, where it turns and runs east to the station. Upon leaving Loomis, seven or eight miles north of Mitchell, the conductor went through the passenger coach to take up tickets, and then went into the caboose and changed his clothes and washed, made up his report, and when about a mile from Mitchell went up into the cupola in the caboose, looked out of the window to observe the train, and thought it was running in one section. Wynn, the rear brakeman, on leaving Loomis, went into the caboose, and went to work finishing bills, and making up switch lists and reports, which he handed to the conductor, Foster, about a mile and a half out of Mitchell. He then got his mittens on, and went outdoors on the front end of the caboose, where he remained until the train reached Mitchell. He testifies that he made an observation of the train by looking round the north side of the passenger coach, which was in front of the caboose, for perhaps a minute, and says: "In my opinion the train was running in one section." When the whistle blew for the station, he was on the front end of the caboose, looking out on the south side of the train for the milepost, and he remained standing there until the accident, which he thinks occurred two or three minutes later. When the crash came, he heard glass falling, and went into the caboose and saw the conductor come down out of the cupola, went with him into the coach, and then got off the coach, and went to the depot after a doctor. The evidence does not disclose the movements of the front brakeman until the train reached the whistling post, at which point he testifies he was on the tender, just behind the engine, from which place he made an observation of the train, and saw the red and green lights on the caboose. He then climed down on the south side of the train and over on to the engine, and was on the engine steps when the collision occurred. A moment later he got off the engine, turned two switches, and then rode on the engine steps to the station. At the time he observed the train, it appeared to be running in one section, but he says. "I am not positive as to whether it was broken in two sections or not." The engineer and firement who were witnesses supposed that the train

was running in one section. In fact, the caboose, passenger coach and coal car in front of it, had broken loose from the train some time after leaving Loomis, but at what point does not appear, except that one witness Parshall, who' was in the coach, testifies that, "as the train came around the curve, there seemed to be quite a separation between the coach and the cars in front." At this time the train was running about 25 or 30 miles an hour, and appears to have left the three cars some distance behind. On approaching the switch, the engineer applied the air and slackened the speed of the front section of the train to three or four miles an hour, and the collision occurred when the three cars which had broken loose followed on a down-grade, and struck the rear end of the train. The shock was such as to seriously injure the conductor, who was in the cupola of the caboose, and throw the plaintiff against the seat in front in such manner as to severely injure his side.

On the trial his counsel asked plaintiff: "You may state whether or not you have recovered from the effect of the accident. (Objected to as leading and suggestive.) He can state the facts, his present condition, and how long that condition has existed. Then it is for the jury to say whether he has recovered or not. (Objection overruled. Defendant excepts.) A. No, sir; I have not. I am still suffering from that pain in the head. Constant pressure there." This witness was also asked the following question: "Now, you may state whether or not this injury to your head has any effect on your doing business at this time? (Objected to as * * * leading and suggestive and calling for the conclusion of the witness. Objection overruled. Defendant excepts.) A. It has. Q. Now, you may state what that is. A. Well, when I get in any position that requires a good deal of thought and care, it increases that pain. Q. And you may state whether or not you are able to carry on business on that account. (Objected to as calling for the conclusion of the witness. Let him state all the facts and what he does, and the jury is to say as to what is his physical condition. Objection overruled. Defendant excepts.) A. No, sir; I am not. Q. Now, tell the jury exactly what effect this injury to your head has.

(Objected to as not 'proper redirect examination. Objection over-
ruled. Defendant excepts.)   A. As I said before, when I get at
any work or business, where I get tired, I have to stop on ac-
count of this pain in my head." It is contended by appellant that
plaintiff should have detailed to the jury the facts in reference to
his physical condition, and left the jury to determine whether he
had recovered from the effect of the injury received.   It is suf-
ficient to say that plaintiff, on direct examination, had already
detailed all the facts pertaining to his then physical condition.
And even were the ruling technically wrong, which we do not
hold, we are unable to see, in view of the witness' answers, that
defendant could have been prejudiced thereby, and therefore such
ruling would not constitute reversible error.

One Parshall, who at the time of the accident was a passen-
ger in the coach, and was called as plaintiff's witness, on direct
examination was asked: "Did you notice anything peculiar when
the train came around the curve there?" Objected to as incompe-
tent ,irrelevant, and calling for a conclusion of the witness and no
positive independent fact, which objection was ·overruled, and
the ruling is assigned as error.   The witness answered:   "Yes,
I did.   I noticed there seemed to be quite a separation between
the coach and the cars that were in front.   That is, I would not be
positive that there was no car in front of the coach, but it seems
when we came around the corner there seemed to be quite a sep-
aration, and I wondered why it was.   That is, between the coach
and the box car there.   And, sitting there in the car looking, I
could see that." While the form of this question is improper and
a ruling sustaining the objection would not be reversed, the an-
swer to the question contains nothing but a statement of the con-
ditions observed by the witness, and the ruling cannot be deemed
prejudicial.   Defendant's witnesses, Slater and Terry, were the
engineer and fireman· at the time of the accident.   Defendant's
counsel asked them the following questions:   "Q.   State whether
or not in the movement of this train you conducted its movements
after this mile post here in any different or unusual manner than
you conducted your trains formerly. (Objected to as incompetent
immaterial.     *     *     *   Objection sustained.   Defendant ex-

cepts). Q. State whether or not there was anything unusual in the management of this train from the time it went upon the curve until it reached the place where it slowed down at the switch. (Objection sustained.)" The ruling is assigned as er·or. These rulings were proper. The questions do not call for any knowledge of the witnesses as experts upon any matters affecting the proper method of operating the train. At most, the effect of such evidence might be to show that the train at other times had been operated with the same degree of care, or of negligence, as on the night this accident occurred. Such evidence would be wholly immaterial in any case. Various other rulings of the court on the admission of evidence and the overruling of defendant's motion for direction of a verdict are assigned as error. But as these rulings relate to specific acts of negligence referred to in the record, and seem to present the same questions raised by exceptions to the charge of the court, they may be more conveniently disposed of by a consideration of alleged errors in the charge to the jury. The allegation of negligence in the complaint is as follows: "That, while on said train as such passenger aforesaid and at a point on said line of railway about a mile from Mitchell aforesaid, * * * · the defendant and its agents, servants, and employes so neglectfully, carelessly, and unskillfully managed, ran, and operated said train that through the negligence, carelessness, and misconduct of defendant's said agents and servants said train broke in two and became in two sections, and was allowed to separate and then come together again with such force and violence that this plaintiff without neglect on his part was so jerked, jarred; and thrown about and across a seat in the car in which he was riding as to sustain great bodily injury." Appellant in his brief says: "The theory of the plaintiff upon the trial of this action was that the defendant company was guilty or negligence which would permit him to recover for injuries sustained by him because the rear brakeman was not in his proper place on the freight train when approaching the station." This statement of appellant's counsel must be accepted as true so far as it goes, and it throws much light into the record here presented, and aids us in eliminating many rulings and assignments of error which have

become immaterial. The special verdict above quoted, which is
not questioned by appellant as to its form, finds directly in line
with the foregoing statement in appellants brief. Epitomized
the special finding is that the conductor and rear brakeman at the
time of the collision were not in position to view their train; that
the rear brakeman, if he had used the utmost care and diligence
for the safety of passengers considering the mixed character
of the train, should have been in front of the coach or at some
point on the train where he could view it; and that, if the
break in the train had been discovered by due dilignece on the
part of the trainmen, the collision could have been prevented by
setting the hand brakes on the rear section. This special finding
of the precise acts or omissions constituting negligence is equiva-
lent to a finding against the plaintiff as to all other acts of negli-
gence alleged in the complaint, or which might properly be
proved under the allegations of the complaint. Prior to the enact-
ment of statutes providing for answers to special questions, the
courts were permitted to inquire of the jury on what specific
ground they based their general verdict, and the answer to such
inquiry was made a matter of record and given the effect of
special findings, and controlled the general verdict. Such is the
effect of special findings under our statute. Spurr v. Shellburne,
131 Mass. 429; 29 Am. & Eng. Ency. 1034. And silence upon
any material fact to be found is taken as a finding against the
party having the burden of proof. Id.; Topeka v. Noble, 9 Kan.
App. 173, 58 Pac. 1015; Allen v. Lizer, 9 Kan. App. 548, 58 Pac.
238; Morrow v. Saline Co., 21 Kan. 484; Chicago, etc., Ry. Co.
v. Ramsey, 168 Ind. 390, 81 N. E. 79; Shaw v. Barhart, 17 Ind.
183, approved in Telephone Co. v. Fehring, 146 Ind. 193, 45
N. E. 64. See, also, Cronk v. C., M. & St. P. Ry. Co., 3 S. D.
97, 52 N. W. 420. The court in several portions of its charge to
the jury, in submitting the question of defendant's negligence,
said: "Were the employes in charge of said train guilty of negli-
gence in making up * * * such train?" etc. "The law of
this state requires that persons in charge of a train * * *
must use the utmost care and dilligence * * * in making up
the train," etc., to which exceptions were duly taken. It is urged

that no issue of negligence in the making up of the train is pre-
sented by the allegations of the complaint or the evidence. But
without entering upon an analysis of the allegations of the com-
plaint, or an examination of the evidence, it is entirely clear that
the special findings of the jury above quoted negative any neg-
ligence on the part of the employes in making up the train or
placing the passenger coach, and therefore no prejudice resulted
to the defendant by reason of this charge to the jury. 29 Am. &
Eng. Ency. of Law, 1034, note 6, and authorities there cited.

Certain rulings of the court upon questions asked by de-
fendant's counsel of its witness Foster as to the proper place of the
passenger coach in making up of the train are also disposed of
by the views above expressed. After defendant had rested its
case, the plaintiff called one Collard as a witness, who testified
on his preliminary examination that he had been employed as a
railroad conductor both on freight and passenger trains for 25
years, and was well acquainted with the duties of a conductor on
a freight train and those of the brakemen who work on a freight
train. Plaintiff's counsel then asked him: "Now, Mr. Collard,
I will ask you to state where the proper place for the rear brake-
man is on a freight train when they are coming into a station.
(Objected to as incompetent, irrelevant, and immaterial. The
witness has not shown himself competent to testify, and for further
reason that it would in no manner tend to establish any direct act
of negligence on the part of defendant, in this case. · Overruled
and exception.) Ans. On top of the train." In the defendant's
main case one Wynn, the rear brakeman, had been called as a
witness, and testified: "I could see the smoke and the lights on
the engine when the whistle blew for the Mitchell station. I was
on the platform of the caboose. * * * I was just standing
there ready for an emergency. That was my proper place as rear
brakeman." The contention of defendant was that every employe
was in his proper place on the train, and was diligent in the dis-
charge of his duties. There was a direct and perhaps vital issue
of fact thus presented by defendant as to whether this brakeman
was in his proper place when the train was approaching the Mit-
chell station. In fact, this seems to have been the precise matter

in controversy under the evidence. Plaintiff had shown by his evidence that the train had broken in two, and that the coming together of the parted sections had caused the collision which occasioned the injury to himself. That such a state of facts raised a presumption of negligence cannot be doubted. In Feldschneider v. C., M. &. St. P. Ry. Co., 122 Wis. 423, 99 N. W. 1034, the court says: "It goes without saying that a broken train in motion is both an abnormal and a dangerous condition of things. The mere fact that a train is running through the country in this condition doubtless raises a presumption of negligence on the part of defendant, because, if the equipment and management of the train were perfect, such a state of things would not, in the ordinary course of events, be possible except through the operation of some intervening cause. It is a case of res ipsa loquitur. This presumption may, of course, be rebutted and overcome by evidence showing that there was no negligence, and the question whether it has been overcome is the question to be considered." In rebuttal of this presumption of negligence, the defendant in this case had offered the testimony of its employes in charge of the train. That the witness Collard had shown himself competent to testify and that his evidence was proper rebuttal cannot be doubted. Cinn. & Zanesville R. R. Co. v. Smith, 22 Ohio St. 246; Reifsnyder v. C., M. &. St. P. Ry. Co., 90 Iowa 76 57 N. W. 692; Czezwzka v. Benton-Bellefontaine Ry. Co., 121 Mo. 201, 25 S. W. 914.

It is also contended by appellant that the question asked this witness was not competent because the question does not refer to the testimony of the witnesses on the trial or require this witness to assume the truth of such testimony, but permits him to form an opinion on any idea or fancy he may happen to entertain. A sufficient answer to this contention is that no such objection was made at the trial. It is also contended that the evidence fails to show that the negligence found by the jury was the cause of plaintiff's injury. In support of this view, appellant's counsel cites the rule laid down by this court in the case of Mankey v. C., M. & St. P. Ry., 14. S. D. 468, 85 N. W. 1013. That action was brought to recover damages for injury to stock on the defendant company's railway track. The negligence alleged was

the failure of the defendant to ring the bell or blow the whistle, as required by section 3016, Comp. Laws 1887. An examination of that case will show that the only question before the court was as to whether the failure to ring the bell or sound the whistle constituted negligence per se. The court held that it did not. The court only rules in substance that proof of a failure to ring the bell or sound the whistle, and also of injury to the stock, was not sufficient to make out a prima facie case of negligence. The court held there must be other evidence tending to show some connection between the failure to ring the bell or blow the whistle and the injury complained of. It is plainly apparent that the ruling in that case is not decisive of the question here presented. In the case the case at bar the proof of the breaking in two of the train, the collision of the two sections, and that the injury to the plaintiff was occasioned by such collision constitute sufficient proof of negligence, and also sufficient proof that the injury was the direct result of such negligence.

Defendant assigns as error the giving of the following instruction: "You should take into consideration, so far as you have the knowledge and so far as the evidence may show, the general conduct and management and character of railroads and of freight and mixed trains, as well as the duties and responsibilities of the train crew and those in charge of it and all of the particular facts and circumstances which surround the railroad business as far as you know of as men of experience, and as far as shown by the evidence in this case." This is merely an excerpt from the charge of the court, and does not contain the entire language used by the court in its instructions upon the propositions presented. In connection with the foregoing excerpt, and as a part of its instructions, the court also said to the jury: "Now, gentlemen, in determining the question of whether or not the company or its crew was guilty of negligence or on the other hand in determining whether or not the train crew failed to use the utmost care and diligence for the safety of the passengers compatible with the kind of train in their charge, you must take the evidence, and apply to it your judgment and experience as men." The language used in these instructions may be fairly subject to

criticism, but it appears to us that the jury could hardly have misunderstood the meaning intended to be conveyed by the court. Taken as a whole, the purport of the instructions is that the jury should take into account the evidence and apply to it their judgment and experience as men. In the language of Campbell, J., in Rajnowski v. Railway Co., 74 Mich. 17, 41 N. W. 849: "What the court meant and what they would naturally understand was meant was no more than this, that the jury should apply to the testimony and the facts their own general intelligence and knowledge of affairs. This all sensible men are bound to do." See McCormack v. Phillips, 4 Dak. p. 536, 34 N. W. 39; State v. Brennan, 2 S. D. 394, 50 N. W. 625; Sanford v. Gates, 38 Kan. 405, 16 Pac. 807.

Other assignments of error appear in the abstract, but, as they are not discussed in appellant's brief, they are deemed abandoned, and need not be noticed further. Edgemont Co. v. Tubbs Sheep Co., 22 S. D. 142, 115 N. W. 1130.

As we find no reversible error in the record the judgment and order of the trial court are affirmed.