No. 2589

# STATE *v.* RUSSELL

December 1, 1923.                    220 Pac. 552.

1. CRIMINAL LAW—OMISSION OF EVIDENCE FROM BILL OF EXCEP-
TIONS AND LACK OF EXCEPTION HELD TO PREVENT CONSIDERATION
OF DENIAL OF CHANGE OF VENUE FOR FIRST-DEGREE MURDER
TRIAL.

On appeal by one convicted of first-degree murder, the
court could not consider sufficiency of the evidence to warrant
denial of change of venue applied for to secure a fair and
impartial trial, where there was no exception, - and where
the evidence in support thereof, though in the record, was not
the bill of exceptions.

2. JURY—CHALLENGE FOR ACTUAL BIAS AGAINST MEXICAN ACCUSED
OF MURDER HELD PROPERLY DENIED.

In a prosecution for first-degree murder, where, after both
counsel had probed a talesman as to his bias against Mexi-
cans, he answered to questions propounded by the judge, that,
though he did not like the Mexican race, he was sure that
fact would not prejudice him against defendant, defendant's
challenge for actual bias was properly denied.

3. CRIMINAL LAW — APPOINTMENT OF INTERPRETER FOR INDIAN
MOTHER OF DECEASED EXAMINED ON STAND WITHOUT ANSWER-
ING HELD PROPER.

In a prosecution for first-degree murder, where the Indian
mother of deceased was examined on the stand for twenty
minutes, and answered no questions, and the court's observa-
tion convinced the court that an interpreter was necessary,
appointment of one suggested by defendant's counsel, after
overruling objection thereto, was not an abuse of discretion,
defendant being allowed another interpreter to check up the
first.

4. HOMICIDE — DEFENDANT COULD NOT CROSS-EXAMINE INDIAN
MOTHER OF DECEASED TO SHOW REMOTE ACTS SHOWING HER
GUILT AND DEFENDANT'S INNOCENCE.

Where accused attempted to show that deceased's Indian
mother, who was standing near the body with a stab in her
right arm, had killed her daughter because of a previous
quarrel over a $15 debt owing from the daughter and defen-
dant, who went together as man and wife, defendant could
cross-question the mother to show her animosity to defendant,
but not to show remote acts not connected immediately with
the crime charged.

5. CRIMINAL LAW—PROOF THAT ANOTHER PERSON COMMITTED THE
CRIME CHARGED COULD NOT BE SHOWN BY ACTS ONLY
REMOTELY CONNECTED THERETO.

Defendant may show by any legal evidence that another
person committed the crime with which he is charged, but
disconnected and remote acts outside of the crime itself cannot
be separately proved for such purpose.

6. CRIMINAL LAW—STATE'S EXHIBITION OF GARMENT WORN BY DECEASED HELD NOT PREJUDICIAL.

In a murder prosecution, the state's exhibition in evidence of the garment worn by deceased at the time of the homicide, there being no question of her identity, though irrelevant and immaterial, was not prejudicial, since a dishonorable purpose to influence the jury should not be impugned.

APPEAL from Fourth Judicial District Court, Elko County; *Wm. E. Orr*, Judge.

Thomas Russell was convicted of murder, and he appeals. **Affirmed. Petition for a writ of prohibition denied.**

*Chester D. French,* for Appellant:

The necessity for appointment of interpreter lies within discretion of trial judge. When witness can understand English, interpreter should not be appointed. Rev. Laws, 5430; People v. Avila, 194 Pac. 758.

Clothing connected with crime cannot be shown to jury unless properly connected and proved to be in same condition as at time of crime. 3 Jones, Evidence, 23; Walker v. Ontario, 95 N. W. 1086.

It is duty of examiner in examination in chief to establish time and place of happening of certain act, in order that opposing counsel may have opportunity to deny or rebut such testimony.

The right to impeach witness now extends to general reputation as to good or bad character as well as veracity, and it is clearly relevant to examine witness as to past life as it might tend to influence character for truth. It was proper for purpose of impeachment for appellant's counsel to examine witness. 5 Jones, Evidence, 208. Witness may be impeached as to credibility on collateral matters. Matters as remote as four to twelve years are subject to review on cross-examination. 5 Jones, Evidence, 156; Territory v. Chavez, 45 Pac. 1107. Witness may be impeached by showing bias. Sweet v. Shamway, 41 L. R. A. (N. S.) 877.

Conduct and bad character of accuser may be shown as affecting credibility. 28 R. C. L. 614, 628.

Talesman who is prejudiced against race of one of parties is not free from such bias or prejudice as would prevent giving fair trial. 16 R. C. L. 270.

Court should resolve all doubt as to competency of witness in favor of defendant. 16 R. C. L. 261, 262.

*M. A. Diskin*, Attorney-General, and *Thos. E. Powell*, Deputy Attorney-General, for Respondent:

The court was well within its discretion in appointing interpreter for witness Mamie Johnny, as casual reading of the record shows no progress could be made without interpreter. 40 Cyc. 2413, 2414.

It is not always possible to fix time and place of certain acts on examination in chief. If they are afterwards fixed, by same or other witnesses, the rule is satisfied.

Absolute proof that clothing connected with crime is in same condition when exhibited to jury as it was 'at time of crime is impossible. It is only necessary to prove any fact in criminal case beyond reasonable doubt.

Defendant's theory was that the mother killed her daughter, and in his case in chief it would have been admissible to show ill-feeling between them, but that was not to be made out on cross-examination of state's witnesses. At the time, it was clearly irrelevant and immaterial and not proper cross-examination. A party may not introduce a defense by cross-examining his adversary's witnesses as to matters not germane to direct examination. 28 R. C. L. 605, note 13.

Evidence of bad character for chastity, when such character is collaterally, not directly, in issue, is not admissible for purpose of impeaching credibility of witness. State v. Larkin, 11 Nev. 314; 40 Cyc. 2605. The examination was an attempt to impeach by insinuation, which is not permissible. 40 Cyc. 2626.

Counsel attempted to impeach Mamie Johnny upon cross-examination of Guy Johnny. Such evidence is clearly inadmissible. The matters were collateral. 28

R. C. L. 613; 40 Cyc. 2569, 2570. One witness cannot be cross-examined merely for purpose of impeaching another.

Where ill-feeling is shown, facts and circumstances causing it cannot be gone into further than necessary to ascertain its extent and nature. 28 R. C. L. 616.

Where appeal is from judgment and order denying motion for new trial, and not direct appeal from order refusing change of venue, that question cannot be considered. Rev. Laws, 4835, as amended Stats. 1913, p. 274.

By the Court, SANDERS, J.:

The defendant, Thomas Russell, a Mexican, was accused by information of the murder of one Mamie Johnny, an Indian woman, with a knife, on the 15th day of September, 1922, at Elko, in the county of Elko.

The defendant prosecutes this appeal from a conviction of murder in the first degree, with the death penalty assessed.

1. When the case was called for trial the defendant made application for a change of venue, on the ground that he could not obtain a fair and impartial trial in Elko County. The application was refused, but the defendant did not except to the order of refusal. While the evidence in support of the application is contained in the record, it is not incorporated in the bill of exceptions. We, therefore, are not authorized to consider or pass upon the sufficiency of the evidence to support the order of refusal.

2. It is urged by counsel for the defendant that had there been no other serious error in the case, that of the trial court in denying and overruling the defendant's challenge to the talesman, Richard F. Wood, on the ground of actual bias, would of itself be sufficient to warrant this court in remanding the case for new trial. The challenge is predicated upon the talesman's bias against Mexicans. It appears that when both counsel for the defendant and the state had probed the talesman as to his state of mind with respect to his bias

and feeling against Mexicans, the trial judge examined the juror with this result:

"Court. You answered counsel for the defendant that you did not like Mexicans? A. I don't like the Mexican race.

"Court. As a race? A. No, sir.

"Court. Now, I will ask you to consider carefully, and search your own mind, and answer me this question: Do you think that that feeling against the race would in any manner influence you for or against this defendant, unconsciously or otherwise, if you were chosen as a juror? Do you think that would enter into your mind or enter into your opinion, unconsciously or otherwise, and prejudice you against the individual on trial? A. No, sir; I have no feeling against this individual.

"Court. And your feeling against the race would not be carried as against the individual? A. No, sir.

"Court. And I will ask you this: Could you sit here and consider this case with the same fair impartiality and with entire absence of prejudice, the same as if it were a white man or any one else on trial in this case? A. Yes, sir.

"Court. You are sure that you can do that? A. Yes, sir.

"Court. And your feeling would not in any way prejudice you against this defendant? A. No, sir.

"Court. The challenge is denied."

Upon careful review and consideration of the entire examination, we find nothing which leads to a just inference, in reference to the case, that the talesman would not act with entire impartiality. Both on reason and on authority, if such prejudice or feeling by a talesman is not sufficient to prevent him from trying a case to which a Mexican is a party according to the law and the evidence, the talesman is competent. This principle was applied in a criminal case where the defendant was an Italian, and a juror testified that that was a race he was "not particularly fond of," and did "not think much of, judging from those we have here." Balbo v. People,

80 N. Y. 498. The principle finds support in numerous criminal cases where the defendants were of the Negro race. See annotated case of Johnson v. State, Ann. Cas. 1912B, 965.

3. The defendant complains that the trial court abused its discretion in appointing an interpreter to interpret the testimony of the prosecuting witness, Mamie Johnny, the mother of the deceased, and of other Indian witnesses. Counsel insists that the witnesses could speak English, and that the court was therefore not authorized under the statute to appoint an interpreter. In this connection the record discloses that the court, after the witness, Mamie Johnny, had refused to answer questions propounded to her, stated:

"Let the record show that the witness has been on the stand and examined for a period of twenty minutes; that during that time all the questions that have been propounded no answers have been elicited; and that it appears from the appearance of the witness on the stand and from the observation of the court at this time of the witness that an interpreter is necessary in this case, and the objection to the use of an interpreter is overruled."

The interpreter was used only to interpret for the witness, Mamie Johnny. The other witness, Bessie Johnny, was examined without the aid of the interpreter, except as to a few questions which she could not understand. The interpreter selected was one suggested by counsel for defendant. It also appears that the defendant was allowed an interpreter to keep check on the state's interpreter. The record clearly supports the position taken by the trial court that an interpreter was necessary in the case in the interests of justice.

4. Many of the exceptions relate to adverse rulings upon questions propounded by counsel for the defendant to the state's and his own witnesses to show motive and to affect the credibility of the state's witnesses, particularly the witness, Mamie Johnny.

The homicide occurred between the hours of 9 and 10 o'clock on the night of September 15. The evidence shows that there were no eye-witnesses to the homicide other than the mother of the deceased, Mamie Johnny,

and her sister, Bessie Johnny. The deceased expired from the effects of a stab wound in her right breast before first aid could be had. Doctor Shaw, a physician and surgeon, testified that in pursuance to a call he went to that portion of Elko adjacent to and west of the Nevada Wholesale Company's warehouse, and found there lying on the ground near the road an Indian woman, who had been stabbed to death, and standing near her another Indian woman, who had been stabbed in the upper right arm. The woman referred to as standing near by was Mamie Johnny.

5. The defense was that the mother, Mamie Johnny, inflicted the mortal wound, and that the defendant in no way participated in the crime. The defendant, as a witness in his own behalf, made it appear that Mamie Johnny was angered at the deceased and the defendant, because they were indebted to her in the sum of $15, and in a quarrel between the parties she drew a knife and struck the fatal blow. Counsel tried to elicit from Mamie Johnny on cross-examination the unfriendly relations between her and the deceased and the defendant, for the purpose of showing motive on the part of the mother for inflicting the wound. Counsel complains that the refusal of the court to allow him to go fully into the animus, bias, and prejudice of the complaining witness, Mamie Johnny, deprived the defendant of his right to impeach her testimony and to establish his defense. In so far as the cross-examination of said witness and the direct examination of any witness in the case went to show the ill-will, animosity, or malice of Mamie Johnny toward the defendant, the court was quite liberal in its rulings, but, when the purpose of the examination disclosed an attempt to prove the innocence of the defendant through the guilt of Mamie Johnny, the court properly refused to permit such questions. It is competent for the defendant to show by any legal evidence that another person committed the ·crime with which he is charged, and that he is innocent of any participation in it, but both on reason and on authority we are of opinion that remote acts, disconnected and outside of the crime itself, cannot be separately proved for such a purpose. 8 Ruling Case Law,

sec. 178, p. 185. A fortiori, such acts and conduct cannot be inquired into or established by cross - examination. One accused of crime may show his innocence by proof of the guilt of another, but the evidence of such guilt must relate to the res gestæ of the event—the perpetration of some deed entering into the crime itself. Levison v. The State, 54 Ala. 520; Carlton v. People, 150 Ill. 181, 37 N. E. 244, 41 Am. St. Rep. 346.

Nothing elicited by the questions overruled afforded any reasonable presumption or inference that Mamie Johnny, the mother of the deceased, struck the fatal blow. There is no evidence whatever which even tends to show that the wound upon the upper right arm of Mamie Johnny was inflicted by the deceased or was self-inflicted. The defendant left the scene of the crime before the deceased had expired, and was arrested the next morning on board a freight train rolling upon the Western Pacific railroad at Montello, in Elko County, and brought back to Elko. He claimed he left the scene of the crime at the urgent request of the deceased; that she did not want her mother prosecuted for the crime; that before he left her she stated to him that she was not much hurt, and that he did not know that the deceased had been mortally wounded until after his arrest. A more improbable defense can scarcely be conceived of. Although the defendant was allowed, practically without interruption, to tell his story and embellish it with all the unfriendly relations and ill-will of the complaining witness toward him, and of his affectionate regard for the deceased, they having lived together as man and wife for a period of more than six months prior to the homicide, the jury did not believe his defense. To our minds the rulings of the court upon the objections to the questions propounded to elicit motive on the part of the mother of the deceased for inflicting a mortal wound upon her own child were proper and without prejudice to the defendant.

As to the question of impeaching testimony, the defense was allowed to show that Mamie Johnnie was a woman of immoral and dissolute habits, and to introduce testimony of a third party from which the jury

might infer that Mamie Johnny, prior to the homicide, had once attempted to poison the defendant. We are unable to agree with counsel that he was unduly restricted and thwarted in his efforts to impeach the testimony of Mamie Johnny.

6. It is complained that the court erred to the great prejudice of the defendant in allowing the state to exhibit in evidence the garment worn by the deceased at the time of the homicide. The garment had since that date been in the continuous possession of the mother of the deceased. We confess that we do not see the relevancy of the evidence, there being no dispute as to the identity of the deceased, the nature or character of the mortal wound, or how it was inflicted. It did not serve the purpose of honestly explaining the occurrence, and we cannot bring ourselves to believe that the garment was designedly offered to prejudice the defendant. We should dislike to impugn to any district attorney a dishonorable purpose in offering this character of evidence to arouse and inflame the passion and prejudice of the jury. The garment as evidence was entirely irrelevant and immaterial, and defendant was not prejudiced by its admission in evidence.

We find no error in the instructions to the jury, and none in the refusal of the court to give those requested by the defendant.

We have carefully examined all the evidence and maturely considered every proposition of law, and reach the conclusion that there is no reversible error in the record. The judgment, therefore, is affirmed.

## ON PETITION FOR WRIT OF PROHIBITION

January 23, 1924.

1. CRIMES AND PUNISHMENTS—DEATH PENALTY.

Where the court gave an instruction to the effect that if the jury return a verdict finding defendant guilty of murder in the first degree, the court would have to pass sentence inflicting the death penalty, unless the jury also, by its verdict, fixed the penalty at life imprisonment, or failed to agree in fixing a penalty, and the jury returned a verdict of guilty of murder in the first degree but did not fix the penalty, the judgment of the court fixing the penalty at death is valid.

APPLICATION for a writ of prohibition restraining trial court from issuing warrant of execution. **Denied.**

*McCarran & Mashburn,* for Petitioner:

The jury rendered a verdict, "We, the jury in the above-entitled action, find the defendant guilty of murder in the first degree." Note the punctuation of the statute. It is for jury, not court, to decide penalty. Stats. 1919, p. 468.

There is distinct segregation by punctuation in California statute. Cal. Penal Code, sec. 190.

The exercise of discretion applies only to the last alternative, "confinement in the state prison for life." People v. Welch, 49 Cal. 185; People v. French, 10 Pac. 378; People v. Rollins, 197 Pac. 209.

Rules of punctuation take Nevada statute out of interpretation as placed upon it in People v. Welch, supra. The court has nothing to do with matter except pronounce sentence of jury. Weatherford v. State, 43 Ala. 320. The jury must determine both character and extent of punishment. Edgar v. State, 43 Ala. 312; Owen v. State, 33 South. 718; Doran v. State, 7 Tex. App. 386.

Some authority must have power to assess punishment where sliding scale of penalties is provided. New Mexico v. Romaine, 2 N. M. 128.

In Jackson v. State, 161 Ind. 136, under statute very similar, court held that even though defendant pleaded guilty to first-degree murder, jury were exclusive judges of case, and must determine punishment. Warner v. State, 102 Ind. 51; Satterfield v. Commonwealth, 176 S. W. 980.

Prohibition is proper remedy to prevent executing void judgment. Mongolo v. District Court, 46 Nev. 410; Havemeyer v. Superior Court, 10 L. R. A. 644.

*Diskin & Powell,* for Respondent:

In People v. Murback, 64 Cal. 369, the court said that the jury were directed if they found defendant guilty of highest degree of murder they should determine at their discretion whether he should suffer death or life

imprisonment; that court could not interfere in this; that they were entirely free to act if they saw fit to exercise discretion at all.

If no punishment was mentioned, court should fix it at death. When jury render valid verdict, but disagree as to penalty, defendant cannot escape. People v. French, 69 Cal. 169.

If verdict is silent as to penalty, court must sentence defendant to death. People v. Welch, 49 Cal. 185; People v. Rowlans, 179 Pac. 209.

The jury were instructed if they returned verdict of murder in first degree and did not fix penalty, court could impose death. This is equivalent to jury's imposing death penalty. Bullen v. State, 245 S. W. 493; State v. Rimerez, 203 Pac. 279.

Weatherford v. State, 43 Ala. 320, relied on by counsel, was decided under statute (Sec. 3661, Ala. Code) which provides that jury must exercise discretion; the word "either" is used "either with death or by life imprisonment."

Owen v. State, 82 Miss. 18, also cited by counsel, was quoted with approval in Weatherford case.

These cases cannot be in point, as use of word "either" clearly shows jury must fix punishment.

In quoting Smith v. State, 75 Miss. 558, counsel omitted following: "Of course, the legal effect of the verdict in this case in the words used is, by legal construction, death."

The Texas code makes it the duty of the jury to find punishment. Sec. 607.

Courts should not hesitate to repunctuate statute where it is necessary to arrive at true legislative intent. State v. Brodigan, 34 Nev. 490.

Supreme Court of United States has decided that judgment rendered in murder case upon verdict which did not even find degree of crime was not void, but merely erroneous, and was not subject to collateral attack. Re Edward Eckert, 41 L. Ed. 1085; Ex Parte Edgington, 10 Nev. 215.

Petitioner has plain, speedy, and adequate remedy at. law. Prohibition is not, therefore, authorized. Rev. Laws, 5709.

Governor may in some cases fix time of execution. It is ministerial and not judicial act. Therefore prohibition will not lie. State v. Summers, 9 Nev. 270; Valentine v. Police Court, 75 Pac. 336.

By the Court, Ducker, C. J.:

We are of the opinion that the application should be denied.

The basis of the application is that the jury, though returning a verdict of guilty of murder in the first degree in the case whereupon he was on trial, did not fix the death penalty, or any penalty, and that the judgment of the court so fixing it is void, since there can be no such penalty adjudged by the court until the jury has by its verdict fixed it at death.

During the trial of the case the court gave an instruction to the effect that if the jury return a verdict finding the defendant guilty of murder in the first degree, it would follow as a matter of law that the court would have to pass a sentence inflicting the death penalty, unless the jury also, by its verdict, fixed the penalty at life imprisonment, or failed to agree in fixing a penalty.

The authorities are divided upon the proposition presented, but in view of the fact that our statute is identical with the California statute, from which it was probably taken, we are of opinion that we should follow the interpretation placed upon the statute of that state long before our statute was adopted, wherein it was held that a verdict identical with the one in this case, under an instruction similar to the one complained of,. was valid.

For this reason we deny the writ.