UNITED STATES, Appellee

v

JESUS RAYAS, Hospitalman, U. S. Navy, Appellant

6 USCMA 479, 20 CMR 195

*Commander James A. Brough* argued the cause for Appellant, Accused.
*Commander Gay E. Milius, Jr.*, argued the cause for Appellee, United States.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case raises questions having to do with the right of an accused person to monitor the performance by the court-martial's interpreter of his duties. Because of the narrow character of the issues involved, a detailed statement of the facts on which the court's findings were based is unnecessary.

The accused confessed to, and—following trial in Japan by general court-martial—was convicted of, violations of a lawful general regulation,[1] through using a syrette to administer a narcotic drug, and attempting to sell two morphine syrettes, military property of the United States.[2] For the purpose of laying a foundation for admission of the appellant's confession, the Government's lawyer at the trial called as a witness a Japanese National whose entire testimony was presented through an interpreter sworn by the court. Before the interrogation of this witness began, trial counsel elicited from the interpreter a statement of his qualifications, including the fact that he had studied the English language for eleven years, and had been employed as a court translator on several previous occasions. However, after several preliminary questions had been propounded, it became apparent that this linguist was experiencing more than a little difficulty in translating counsel's inquiries with accuracy. Further examination into the interpreter's background revealed that he had spoken no English whatever for some ten years following his graduation from Tokyo University. Despite these revelations, defense counsel expressed no objection to the interpreter's competence.

Shortly after trial counsel had reopened direct examination, the accused's attorney sought an out-of-court hearing, at which he contended that the court's interpreter was, in effect, placing words in the mouth of the witness by means of an embellishment of certain questions put. This objection to the translation was based on the advice of one Dr. Ohta—a Japanese associate of the accused's civilian counsel—who had been permitted to sit with the defense in the courtroom for the purpose of discovering flaws, if any, in the interpretation of the testimony of Japanese witnesses. In overruling the objection, the law officer refused to permit Dr. Ohta to challenge the interpretation of questions and answers, and instructed defense counsel that he also was forbidden to interrupt for the purpose of cross-examining the interpreter concerning the accuracy of his translations. In addition, the law officer refused a defense request that Dr. Ohta be permitted to take the stand, and to testify under oath respecting alleged interpretive errors committed by the court's translator.

Thus restricted, defense counsel made little further attempt to question the correctness of the interpretation; the Japanese witness, Miss Sato, readily corroborated the accused's confession; and the latter was swiftly convicted. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, to be confined at hard labor for three years, and to be reduced to the grade of hospitalman apprentice. Intermediate appellate authorities having affirmed both the find-

---

[1] In violation of Article 92, 50 USC § 686.

[2] In violation of Article 80, 50 USC § 674.

ings and sentence, the accused has appealed to this Court, urging that the ruling of the law officer to the effect that the translations of the interpreter were not open to question, other than through a general challenge to ability, was prejudicial to his interests at the trial.

## II

Appellate Government counsel insist that an accused enjoys the right to challenge the *qualifications* of a court interpreter, but may not question in any manner the *accuracy* of the translation given. This position is substantially the same as that taken by trial counsel at the court-martial level. Thus, we are told that, by failing to request removal of the interpreter, the defense cannot now be heard to complain. Although we agree that the defense voiced no general objection to the interpreter's competence and continued use, we are nonetheless certain that the accused acted within his rights in attempting usefully to monitor the translation itself by means of a linguist of his own choice. Thus, the law officer erred in the breadth of his rejection of the defense position in this regard.

The problem before us is one of limited appearance, and the casebooks yield but few instances of value to us here—and none of recent origin. However, a clear pattern—with which we are not out of accord—is established by the infrequent precedents, and this is supported by the analytical writings of scholars and commentators. Essentially, an interpreter is a witness, and one whose conduct must be subjected to the most careful scrutiny. 58 Am Jur, Witnesses, § 556, page 309; Rajnowski v Detroit, B. C. & A. R. Co., 74 Mich 15, 41 NW 849. The accuracy of his translation of testimonial questions and answers is in the nature of a question of fact for the jury and may, therefore, be the subject of impeachment. Wharton, Criminal Evidence, 11th ed, § 1262; 70 Corpus Juris, Witnesses, § 667, page 495. This right to challenge translative accuracy may be exercised either through cross-examination of the interpreter, or by means of calling other witnesses to test the interpretation. Wigmore, Evidence, 3d ed, § 1393; 70 Corpus Juris, supra; State v Louie Moon, 20 Idaho 202, 117 Pac 757, 760. Not only may the general incompetence of an interpreter be shown, but there appears also to be a right "to impeach the correctness of his rendition of testimony in particular cases." People v Walker, 69 Cal App 475, 231 Pac 572, 577. The rule was most strongly stated by the court in Territory v Kawano, 20 Hawaii 469, Anno Cases 1913B, page 258, at page 261.

"It is immaterial whether the translation as rendered by Otsuka was correct or not; the defendant had an absolute right to test that translation with the view of showing that it was inaccurate, if such were in fact the case."

In order to protect the accused's right to a fair and impartial testimonial interpretation, civilian courts have frequently permitted accused persons to rely on counter-interpreters sitting during the trial as advisors. Cf. Lujan v United States, 209 F2d 190 (CA 10th Cir); State v Russell, 47 Nev 263, 220 Pac 552; People v Mendes, 35 Cal2d 537, 219 P2d 1. And in United States v Gilbert, 25 Fed Cas No. 15,204 (CC D Mass) (1834)—where defense counsel objected to certain translations made by the court interpreter, and produced two linguists of his own selection—the trial judge allowed the defense experts to remain at the bar and to correct mistakes in translation.

In view of these authorities, it is clear that we cannot agree with Government counsel that an accused is without right to question the exactness of a translation—although he may be willing to concede the general capacity of the translator. On the contrary, we hold that, despite the Manual's silence in this area, one accused of crime before a military court must in a proper case be permitted appropriately to test the correctness of a qualified court interpreter's translation by means of a reliance on the suggestions of a counter-interpreter.

## III

It would seem to us, however, that much caution should be exercised in the application of the principles ▮ thus enunciated. On the one hand, it is evident that an accurate rendition of the testimony of witnesses is essential to a tribunal's discovery of the truth, and it must, therefore, be open to a party to bring claimed mistranslations to the attention of its personnel. Yet on the other, it is equally certain that the situation contemplated *may* be fruitful of vastly multiplied issues, and resultantly of disorder and indignity, confusion in the mind of the fact-finder, and an undue consumption of judicial time. And it cannot be denied, of course, that the rules of which we are speaking may, on occasion, lend themselves to obstructive—at least to improperly diversive— tactics in the unchecked hands of a desperate litigant with few valid strings to his bow. Indeed, the practical problem created by the language-hampered witness—found so frequently in the overseas military juristic scene— is, in many of its aspects, a troublesome one. Thus, we are inclined to individualize sharply cases like the one before us now, to countenance a reasonably tight administration of relevant principles in appropriate instances, and to rely largely on the discretion of the law officer—the court-martial's source of judicial rulings. In the present instance, however, we must conclude that discretion was abused.

But it does not follow from what has been said in preceding paragraphs that the law officer's refusal to ▮ permit Dr. Ohta to participate to a greater extent in the accused's trial substantially prejudiced a material right of the latter. In an elaborate and complete statement Rayas had confessed his guilt of the offenses of which he was convicted, and thereby acted to relieve the Government from establishing more than the required corroboration—a showing that the crime alleged had been committed by someone. Moreover, the burden of establishing a corpus delicti was met fully by testimony of the Japanese woman to the clear effect that the appel-lant had offered to sell to her two morphine syrettes, and had injected the contents of one into her arm. It is true that this testimony was presented through the agency of an interpreter whose general ability had been questioned—albeit tentatively and indirectly—but it is also certain that individual defense counsel, aided by the advice of Dr. Ohta, was afforded all possible opportunity to cross-examine its source in order to challenge or avoid her story. Even this vigorous probing, however, failed to disclose any sort of material inconsistency which would justify a rejection of the confession for want of corroboration. After a careful examination of the entire record— including all colloquies—we are convinced that no amount of inept interpretation could have confused the witness Sato's explicit and damning statements—or improperly have led her —to the extent that her testimony must be disregarded.

Although we recognize that an accused must be permitted effectively to monitor the translation of ▮ an interpreter, we are not —we are sure—dealing here with a safeguard so basic in character as to fall within our concept of military due process. Nor do we feel that the refusal of the law officer to afford the present accused a full exercise of this right constitutes an error of sufficient gravity to justify the invocation of what has come to be called the doctrine of general prejudice.

Since a distinct overriding of fundamental protections is required for reversal in the face of compelling evidence, we cannot conclude that the law officer's rulings in the premises—inappropriate though they may have been —constituted an abuse of discretion specifically prejudicial to the accused. Indeed, the court-martial's "judge" in the case at bar, faced with an unusual situation, seems to have been motivated entirely by—perhaps even preoccupied with—a desire to conduct the trial in an orderly and disciplined manner, a generally praiseworthy purpose, and one on which this Court has repeatedly insisted. That he went too far in the

service of this aim does not demand his condemnation.

Indeed it is to be noted that on two occasions the law officer offered defense counsel an opportunity to object to the interpreter's qualifications and—when the latter continued to challenge the correctness of the translation—explicitly offered an adjournment until an interpreter *satisfactory to the defense* could be located. In each instance counsel for the accused declined, and insisted on his right to cross-examine and rebut the court's linguist. Additionally, throughout the remainder of the trial Dr. Ohta was permitted to remain at the counsel table for the purpose of advising the defense, and the accused's lawyer appears to have taken full advantage of the former's admonitions while cross-examining the Japanese prosecutrix. We conclude, therefore, that the rulings of the law officer restricting the appellant's attempts to challenge the accuracy of the translation in question—although legally erroneous—did not result in substantial prejudice to the accused.

IV

The decision of the board of review is accordingly affirmed.

Chief Judge QUINN and Judge LATIMER concur.