STATE of Missouri,
Plaintiff-Respondent,

v.

Ronnie RANDOLPH,
Defendant-Appellant.

No. 48139.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 30, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 5, 1985.

Application to Transfer Denied
Nov. 21, 1985.

Debra Buie Arnold, St. Louis, for defendant-appellant.

John Ashcroft, David C. Mason, Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

Ronnie Randolph, a deaf person, appeals from a judgment convicting him of capital murder in violation of § 565.001 RSMo. 1978 (repealed 1983). A jury found appellant guilty and imposed a sentence of life imprisonment with no probation or parole for a minimum of fifty years. Appellant correctly argued that inadmissible evidence of past crimes prejudiced his trial. The judgment is reversed and the cause remanded for a new trial.

Appellant raises five points in his brief. He charges the trial court with error: (1) in abusing its discretion when it found appellant did not suffer from a mental disease or defect excluding competency to proceed; (2) in denying appellant's amended motion to suppress statements; (3) in permitting witnesses to testify over objection that the victim thought that appellant and Wallace Spivey had robbed one of the witnesses and placed him in a bathtub filled with water, and in allowing another witness to testify that decedent was afraid of defendant and Spivey; (4) in allowing a witness to testify that appellant and Spivey had raped her, and that the victim knew it; and (5) in submitting Instruction No. 5 on acting with another in committing capital murder. The alleged error concerning the testimony of the purported rape victim is raised on a plain error basis because there was no objection to the testimony during the trial.

Appellant and his roommate, Wallace Spivey, both deaf persons, were the last guests to leave a party in the apartment of the deceased victim, Greg Eisenberg, who was also a deaf person. A fight erupted between Spivey and Eisenberg. Appellant told police that he came to his roommate's aid by holding Eisenberg's arms while Spivey strangled Eisenberg with a rope. The two men submerged Eisenberg's body in the bathtub, where police discovered it six days later. Appellant has not challenged the sufficiency of the evidence to make a submissible case.

Although the cause is being reversed and remanded because of trial court error as charged in appellant's third and fourth points, this court will rule upon all of his allegations of error because it is likely the same issues will confront the trial court upon retrial.

In his first point relied on appellant argues at length that the ruling of the trial court that he was competent to stand trial was against the weight of the evidence. He argues that his expert's opinion should have been accepted by the trial court over the opinion of another admitted expert called by the state. This point is denied.

■ Appellate courts are cautioned by the supreme court in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976), that they should exercise the authority to reverse a case because the judgment is against the weight of the evidence with caution and only with a firm belief that the court below was wrong. Appellate courts must defer to the trial judge's evaluation of the credibility of witnesses.

■ The *Murphy v. Carron* standard applies to a finding of fact on competency. *State v. Clark*, 546 S.W.2d 455, 469–470[23–24] (Mo.App.1977). Applying that standard this court cannot say that the trial court erred in finding appellant competent to proceed.

■ This court concludes from the record of the trial court hearing on competency that the trial court's ruling was supported by substantial evidence, was not against the weight of the evidence, that there was no erroneous declaration or application of the law, nor any abuse of discretion. *State v. Bradshaw*, 593 S.W.2d 562, 567[9, 10] (Mo.App.1980). The point is denied.

Appellant next charges the trial court erred in denying his amended motion to suppress statements. The point is denied.

Appellant is a deaf mute. The trial court allowed police officer Robert Griffin to testify that appellant said through a sign language interpreter that appellant understood all of his constitutional rights. Officer Griffin explained appellant's *Miranda* rights to him through the interpreter; appellant signed that he understood those rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The court further allowed Officer Griffin to testify that the interpreter said that appellant made a sign language confession to the murder and to the commission of other violent acts. Specifically, he testified that the interpreter told him that appellant had said through signs that he had aided Wallace Spivey in asphyxiating the victim and placing him in a bathtub filled with water.

The interpreter also interpreted the appellant as saying he had assisted Spivey earlier in robbing Larry Jackson and placing him in a bathtub filled with water. The responses of appellant were not transcribed verbatim but were "handwritten" by another police officer, a detective. Appellant argues it was error to admit the testimony because it was hearsay.

■ Missouri cases hold that deaf mutes may be witnesses. *State v. Howard*, 118 Mo. 127, 24 S.W. 41, 45 (1893); *State v. Smith*, 203 Mo. 695, 102 S.W. 526 (Mo. 1907). In *Kley v. Abell*, 483 S.W.2d 625, 627–28[4–6] (Mo.App.1972) this court said:

... we hold a deaf-mute person is competent to testify if he can communicate; that such person may give his testimony through sign language and an interpreter or reading and writing or both; that the method of testimony to be used is a matter for the trial court in the exercise of its sound discretion ...

Under Missouri law then, there is no question about the competency of the appellant to testify through a qualified interpreter. Appellant does not challenge the qualifications of the interpreter.

■ The problem arises because Officer Griffin, not the appellant or the interpreter, testified to what the interpreter said the appellant said. The appellant understandably challenges this as hearsay, but this court finds the testimony was admissible because appellant was a party opponent.

This is an issue of first impression in Missouri, but encyclopedias and cases from other jurisdictions hold that if a deaf person is a party opponent the translator's interpretations of his testimony are admissible as admissions. 6 Wigmore, Evidence, § 1810(2) at 376 (Chadbourn rev. 1976); *United States v. Da Silva*, 725 F.2d 828, 831–32[6–7] (2d Cir.1983).

Agency is one of the theories relied on in holding that a witness may testify to an interpreter's translation of a party opponent's statements. The interpreter is considered to be the agent of the party opponent. In *Da Silva*, the Second Circuit Unit-

ed States Court of Appeals discussed the question of the agency of an interpreter. The court held the interpreter's testimony was admissible under the federal rules.

The federal court said that, although the interpreter was an employee of the government, it did not prevent him from acting as defendant's agent for the purpose of translating the defendant's statements, made in Spanish, to a drug enforcement agent. The agent could then testify to the defendant's statements as made through the interpreter. The court held that the defendant "authorized" the interpreter to speak for him and characterized the interpreter as a "language conduit."

The opinion in *State v. Letterman*, 47 Or.App. 1145, 616 P.2d 505, *aff'd.*, 291 Or. 3, 627 P.2d 484, (1981) decided an appeal from a second degree burglary conviction in which the defendant was a deaf mute. The facts regarding the testimony in *Letterman* are the same as those in the case under review. A police officer in *Letterman* testified to what the interpreter said that the defendant said through the medium of sign language. The interpreter would sign the officer's questions to the defendant and the defendant then signed his answers to the interpreter whose translations were the subject of the police officer's testimony.

The defendant objected to the testimony on the ground that it was inadmissible hearsay, but the Oregon Court of Appeals held that admitting the testimony was not error. The court said, quoting 6 Wigmore, Evidence, § 1810 at 376 (Chadbourn rev. 1976), that the officer's testimony was admissible as an admission of a party opponent.

The Oregon court discussed the agency theory but declined to say that the defendant had impliedly made the interpreter his agent. In addressing the concern that the foundations of the hearsay rule might be undermined by the creation of new exceptions, the court said that nonetheless the testimony satisfied the requirements of trustworthiness and should be admitted.

The reasoning in *Da Silva* and the discussion of trustworthiness in *Letterman* are persuasive. The state's interpreter in the case under review was qualified. The interpretation was reliable. The court, the state and the defendant all had interpreters in attendance during the trial to assure that the testimony was interpreted accurately and fairly. There was no error in receiving either the testimony about appellant's waiver of his *Miranda* rights or his statements admitting his complicity in the murder.

The state argues persuasively that the central question is whether the translation was reliable. Appellant conceded that the translator was competent, had no motive to lie, and that appellant accepted his services. No further tests of reliability are required.

Appellant relies on *United States v. Rayas*, 6 U.S.C.M.A. 479, 20 C.M.R. 195 (1955). *Rayas*, however, stands for the proposition that under military due process the defendant is entitled to challenge the accuracy of the interpretation of the court's appointed interpreter during trial. In the case under review the trial court did not prevent appellant from challenging the accuracy of the interpretations during trial.

Appellant also contends that we should adopt a two-pronged test to find agency in a translator.

1. The interpreter must (a) be competent, and (b) have no motive to misrepresent what the speaking party says; and
2. The speaking party must (a) not reject the interpreter and, (b) agree substantially with the translation.

Appellant concedes that all but part (b) of the second prong are fulfilled, but contends that because he does not agree that he said he understood and waived his *Miranda* rights, there is no agency between appellant and the interpreter. But if part (b) of the test were to be allowed, an interpreter's testimony could always be avoided by a defendant who argues after the fact that he does not agree with the translation. Under the circumstances here the interpreter, whose qualifications or accuracy

were not questioned, was authorized to speak for the appellant as a "language conduit."

Appellant also argues at some length that the appellant was not competent to understand his rights and the waiver of those rights. Appellant was variously described as of low normal intelligence, mildly retarded, at the upper limits of mental retardation, or having low-average to average intellectual potential.

■ Although no Missouri cases were found on this point, numerous cases from other jurisdictions support a finding of appellant's competency to waive his rights. A borderline retarded defendant with low-average intelligence was held to be capable of waiving his *Miranda* rights in *State v. Smith,* 7 Or.App. 485, 492 P.2d 317 (1971). The trial judge's finding that the appellant waived his rights with understanding was not erroneous.

In his third point relied on, appellant asserts the trial court erred in permitting witnesses to testify over objection that the victim had said appellant and Wallace Spivey had robbed Larry Jackson and placed him in a bathtub filled with water; and in allowing another witness to testify that the victim was afraid of defendant and Spivey.

The state called Larry Jackson to testify that he had been robbed and placed in a bathtub after he had passed out at a party, and that the victim had told him he thought appellant and Wallace Spivey had done it. Appellant's psychotherapist-counselor testified that the victim had said appellant and Spivey robbed Jackson and placed him in the tub. The state later called the coordinator of deaf services at appellant's apartment to testify that several days before the murder the victim had said he feared appellant and Spivey. The state argued that all of this evidence was admissible to show the victim's state of mind. The testimony was hearsay and to allow it was an error which requires reversal.

■ Missouri law recognizes that a deceased's state of mind may be admitted when it is relevant. Specifically, where an accused argues self-defense, suicide, or accidental death of the deceased, state of mind hearsay evidence is admissible. *See, e.g., State v. Ford,* 639 S.W.2d 573 (Mo. 1982), *State v. Singh,* 586 S.W.2d 410 (Mo. App.1979). None of those defenses are present here.

The Missouri Supreme Court reversed and remanded a second degree murder conviction because of erroneously received hearsay evidence in *State v. Benson,* 346 Mo. 497, 142 S.W.2d 52, 54 (1940). The trial court permitted the state to introduce the substance of a conversation between a homicide victim and the witness. The conversation contradicted testimony of the accused relating to his defense of self-defense. The state tried to justify the admission of the evidence on the theory that it showed the state of mind of the victim. The supreme court held that the evidence was inadmissible because it did not show the state of mind of the individual, but was the narration of a past event. The cause was reversed even though a limiting instruction was given to the jury telling them to disregard the evidence.

The testimony of Larry Jackson and the counselor that the victim said appellant robbed Jackson and placed him in a bathtub was also, as in *Benson,* a narration of a past event and did not show the state of mind of victim.

A thorough discussion of the question of the admissibility of hearsay evidence to show the state of mind of a victim appears in *United States v. Brown,* 490 F.2d 758 (D.C.Cir.1973). In *Brown,* the federal court reversed a murder conviction. The court held that where the defense presented no claim of self-defense, suicide, accidental death or any other possible issue that would justify an inquiry into the victim's state of mind, the trial court committed prejudicial error in allowing the victim's wife to testify that the victim said he was frightened that the defendant might kill him.

The opinion speaks of balancing the relevance of the evidence against the danger of unfair prejudice, confusion or delay. It

speaks also of the unsatisfactory state of the law, with which this court agrees wholeheartedly. It emphasizes the necessity for a limiting instruction when the evidence is admissible under the state of mind exception. There was no limiting instruction in the case under review.

The federal court also pointed out that statements recounting past acts of the defendant become insuperably prejudicial when the recital of the acts bears on the central issue of guilt or innocence.

Larry Jackson's testimony that he had been assaulted and placed in a bathtub full of water, and further that the victim told him that he, the victim, thought appellant and Wallace Spivey had done it, was hearsay as it related what the victim had said. Without question this evidence was highly prejudicial to the appellant. It related the same act—putting a person in a bathtub full of water—that the appellant was accused of doing to the victim for whose death the state seeks to hold him responsible.

The trial court relied on *State v. Singh, supra*, which also contains a scholarly analysis of the question of the admission into evidence of declarations of a decedent. *Singh* refers to *United States v. Brown, supra*. The defendant in *Singh* was charged with the murder of his wife. In rebuttal a neighbor was permitted to testify that three days before the murder, the wife told him she was afraid of her husband, afraid of guns, and that defendant had a gun. The testimony was offered for the purpose of proving her state of mind and before the testimony was given, an appropriate limiting instruction was given to the jury.

The court held that the relevancy of the wife's declarations about her fear of her husband and of guns outweighed any possible prejudice to the defendant who had injected the issues of self-defense and accidental death.

There was no question of self-defense or accidental death in the case under review, and it is difficult to find a reason why the state of mind of the victim in telling a third person about what he thought appellant and Spivey had done to Larry Jackson could be relevant. No limiting instruction was requested and none was given.

The admission of this testimony was an invitation to the jury to believe that if appellant had robbed and placed one man in a bathtub, he was probably guilty of killing and placing decedent in a bathtub. The prejudice to the appellant in receiving this evidence far outweighed any possible relevancy or probative effect it might have had.

The state's theory is that the evidence should have been admitted to prove the victim's state of mind because it was relevant. They quote the court in *State v. Singh* as saying the factors which make the state of mind of an alleged victim of a homicide relevant are myriad. *Singh, supra* at 419. They say further that the state of mind of a decedent may be relevant for purposes other than to rebut a defense such as self-defense, suicide or accidental death. It is true that there may be other fact situations which would make the state of mind of a deceased relevant, but there is no relevancy here. The evidence did not show the victim's state of mind, but instead showed through hearsay his conversation about appellant's alleged past criminal activities.

The state argues further that the state of mind of the victim here is relevant to prove appellant's motive for killing his victim. The state is permitted to prove motive, but motive is not an element of capital murder. Motive concerns the state of mind of the appellant, not that of the victim. The state points out that the admission of evidence of a victim's relevant state of mind is error only if the probative value is minimal and prejudicial effect is high. *State v. Kurtz*, 564 S.W.2d 856 (Mo. banc 1978). Here the prejudicial effect was indeed high and the relevancy and probative value minimal.

*State v. Kurtz* actually has no bearing on the case under review. It relates to the testimony of a priest's conversations with a

defendant, not a decedent. It also refers to a police officer's testimony concerning his investigation of the case during which a hearsay objection was overruled. It had nothing to do with the state of mind of the decedent, although the court did say that the questioned evidence, even assuming it was objectionable, was not prejudicial to the appellant.

The state argues further that even if a deceased refers to some prior misconduct of the defendant as a basis for the deceased's fear, this is not prejudicial enough to require exclusion of the evidence. *See State v. Ford*, 639 S.W.2d 573 (Mo.1982).

A witness' testimony about her conversation with the deceased on the day of the killing was admitted in *State v. Ford*. The court held that the testimony was pertinent to show the deceased's state of mind which was in issue to prove which participant in the shooting was the aggressor. The opinion gives no further details, but apparently the defendant relied on a claim of self-defense.

The situation this court confronts in the case under review is different. There was no claim of self-defense. The evidence actually showed the state of mind of the appellant rather than the state of mind of the decedent. The state asserts it was admissible to show the motive of the appellant in killing the victim, the motive being that the victim had gossiped about them concerning the Jackson incident and also about a rape incident which will be considered in the next point.

It was the motive of the appellant or the state of mind of the appellant to which the prosecution refers, not the state of mind of the victim. This court can conceive of no justification for admitting what the state recognizes is hearsay testimony. It was not relevant to the decedent's state of mind except to show that he feared the appellant. His alleged fear of the appellant does not even show a motive. One does not kill another because the other is afraid of him. Self-defense was not an issue.

The state would say that the decedent was gossiping about the appellant and therefore this shows motive. Even if this theory were tenable, the prejudicial effect of evidence of an incident similar to the actions surrounding the murder of which appellant is accused far outweighs its probative value. To show that decedent was afraid of appellant would not be error in a self-defense case. To testify to similar criminal acts is error.

The state admits that the admission of the evidence of witness Jackson may be error, but that even if it were, considering how close an evidentiary call had to be made, and the overwhelming evidence of appellant's guilt, the error should be considered harmless. This court holds that admission of the testimony was error, that it was not harmless, and that the cause must be reversed and remanded because of its admission.

A woman witness was permitted to testify that appellant and Spivey had raped her and that the victim knew of the incident, talked about it, and was murdered because of his gossiping. This testimony, too, was not admissible, and its admission was prejudicial error.

This point was raised on a plain error basis. Appellant failed to preserve the issue by making a timely objection. This court does not decide whether there was manifest injustice or a miscarriage of justice in admitting this evidence under Rule 29.12 because the cause is reversed for error in the testimony about the victim's other hearsay statements.

 Evidence of a separate crime may be admitted to show a motive if motive is in issue and if the evidence is relevant. *State v. Buckles*, 636 S.W.2d 914, 918 (Mo. banc 1982). The trial judge must explore the relevance of the evidence with "rigid scrutiny," since evidence of other crimes inevitably raises an unwarranted presumption of guilt in the jurors' minds. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954).

 The trial court erred in finding the alleged rape victim's testimony relevant.

The prosecution's theory did not depend upon the truth of the rumor which the victim allegedly spread, but rather upon whether the victim spread such rumors and whether the appellant knew it. No witness testified that the victim told him about the supposed rape. The only evidence that appellant thought the victim had said anything on the subject came from the appellant's psychotherapist. She testified that:

[The appellant] said that Greg had been gossiping to many people about the incident[s] with ... [the alleged rape victim]. This was over and finished and Greg must stop the gossiping.

■ The relevance of the supposed rape victim's testimony is tenuous. It is difficult to imagine any testimony more prejudicial than a woman identifying the accused as the man who raped her. Evidence that appellant raped someone is not sufficiently relevant to overcome its prejudicial impact. The trial court must resolve doubt in favor of the accused when ruling on the admissibility of evidence of other crimes. *Reese, supra,* 274 S.W.2d at 307.

■ Appellant finally argues that error tainted the jury instruction used to convict him. The contested instruction is MAI–CR 15.02, the instruction for capital murder, as modified by MAI–CR 2.12, the aider and abettor instruction. Appellant complains that the disjunctive phrase "defendant or Wallace Spivey" allowed the jury to convict appellant on evidence sufficient to convict only Wallace Spivey.

■ The trial court correctly applied the MAI instructions. This court will not find error where the trial judge follows the mandates of the MAI. *State v. Jenkins,* 622 S.W.2d 281, 383–84[3] (Mo.App.1981), citing *State v. Washington,* 570 S.W.2d 838, 843[13, 14] (Mo.App.1978).

The judgment is reversed and the case remanded for a new trial.

SMITH, P.J., and SATZ, J., concur.