**UNITED STATES**

v.

**Senior Airman Downs LADELL, Jr.,
FR 462–17–1175, United States
Air Force.**

**ACM 27945.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 3 June 1989.

Decided 29 March 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major George P. Clark.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Major Terry M. Petrie and Captain David G. Nix.

Before FORAY, LEONARD and MURDOCK, Appellate Military Judges.

DECISION

MURDOCK, Judge:

This case presents the question of the proper standard of review by the Courts of Military Review and an interesting twist to handling testimony given through an interpreter. The appellant was charged with wrongful use and distribution of cocaine over a nine month period. He was convicted of the use specification and acquitted of the distribution offense. He has asserted one error, and invited our attention to three other issues. We find merit in one of them, modify the finding of guilty, set

aside the sentence, and authorize a rehearing on the sentence.

## I

The appellant asserts that the evidence is insufficient to prove Specification 1 of the Charge (use of cocaine). The test the government urges us to apply for evaluating sufficiency of the evidence is the wrong one. Since we have seen this incorrect standard repeated in several briefs recently, we feel compelled to state what we consider to be the correct standard. The government brief states:

In determining whether the evidence was sufficient to find appellant guilty, the test is whether, 'considering the evidence in the light most favorable to the prosecution, a reasonable factfinder *could* have found all the essential elements beyond a reasonable doubt.' *United States v. Turner*, 25 M.J. 324 (C.M.A.1987) (emphasis added). "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ That is not the standard for review of evidence by the Courts of Military Review. Article 66(c), UCMJ, 10 U.S.C. § 866(c), gives us the responsibility to review a case for both factual and legal sufficiency. In fact, *United States v. Turner* makes this clear. In *Turner*, the Court of Military Appeals sets out the full test, pointing out that:

[T]he Court of Military Review has the duty of determining not only the legal sufficiency of the evidence but also its factual sufficiency. The test for the former is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). For factual sufficiency, the test is whether, after weigh-

ing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt.

*Turner*, 25 M.J. at 324–325.

It is this second provision, the test for factual sufficiency, which is lacking from the government's statement of the test.

■ The appellant was charged in Specification 1 of the Charge with wrongful use of cocaine on divers occasions from on or about 1 July 1988 to on or about 28 February 1989. Applying the proper test, we are not convinced that the evidence was sufficient to prove the specification as charged.

The government produced two witnesses and a positive urinalysis result to prove the offense. One of the witnesses was a well-known and respected expert on the operation of the Air Force urinalysis system. We have no reason to challenge or disbelieve his testimony in this case. The other witness was Airman First Class Sheridan, an acquaintance of the appellant who was testifying under a grant of immunity.

Investigators for the Air Force Office of Special Investigations (OSI) called Sheridan to their office for questioning as a possible drug user. During the course of a daylong interview he mentioned the appellant as a fellow drug user. The OSI questioned the appellant later that same day. During that session he denied any drug use, consented to a search of his persons, vehicle, and quarters and consented to the urinalysis which led to part of the use charged in Specification 1.

At the appellant's court-martial, Sheridan provided very vague support for the government's case. He claimed he had seen the appellant use cocaine 10 to 20 times, but he could only describe one and put dates on two occasions. He testified that the first time was sometime in July of 1988 and that "to the best of his recollection" it took place at Sheridan's off-base apartment. The only time he could describe in any detail was a use that he

stated occurred before a party on the first Friday in February 1989.

Cross-examination revealed information about Sheridan that leads us to discount much of what he said. He used marijuana and speed and distributed marijuana while he was in high school. He did not disclose this information when he enlisted; nor, did he reveal it when he applied for a top secret security clearance. He testified that the reason he suppressed this information was "it wasn't that big of a usage or doing it. I had been dealing, and I wanted to get in the service." When asked "if it were still to your benefit, Amn Sheridan, would you still lie on these forms?", he responded, "I would lie, I guess". He admitted lying to the OSI, during their interview, about his drug usage, and to his Air Force supervisor "when it's been to gain something for [himself]". He also admitted to appropriating billeting funds for short-term personal loans.

Sheridan testified that he saw differences in types of lies. He saw categories of lies as: lies that would hurt people, lies to yourself, and finally, "lies that will benefit you." When he was asked about the risk of being thrown in jail for his own drug use, he agreed that he saw himself "being able to get away with all this" as a "trade off for ... giving those names and ... coming in to testify". He also testified that at one point after he gave his statement to the OSI he wanted "to retract all of [the names he had given]" until he "found out from [his] lawyer that [he was] going to be exposed to court-martial at that time". He agreed with the defense counsel's statement that "It was pretty clear to you from that point that if you back off of your statement you were going to pay for it." He also agreed that it was okay to lie at times, "when you know the situation ... [i]f it will get you out of something it is okay to lie", and that "[t]hat's the way [he had] lived [his] life before this point".

During redirect examination, the trial counsel was able to shed a more flattering light on some of these statements, but we are concerned with the lack of moral discipline revealed by Airman Sheridan's testi-

mony. The court apparently felt uneasy about relying on Sheridan's testimony, because they acquitted him of the distribution specification for which he was the only government witness. We share that uneasiness as we review the remaining specification. Judge Cox recently voiced a similar opinion when he said, "I am troubled, however, by the continued practice of prosecuting servicemembers for drug use based solely upon the testimony of other drug abusers, whose testimony is highly suspect and incredible." *United States v. Corbett*, 29 M.J. 253 (C.M.A.1989).

While we are skeptical of Sheridan's testimony, we are confident of the results of the urinalysis. The chain of custody appears to be complete, the results were positive, and the entire process was thoroughly explained by two experts (one called by each side). *See United States v. Ford*, 23 M.J. 331 (C.M.A.1987); *United States v. Murphy*, 23 M.J. 310 (C.M.A.1987); and, *United States v. Harper*, 22 M.J. 157 (C.M.A.1986). Accordingly, we affirm only so much of the findings of guilty as finds the appellant guilty of a one-time use of cocaine, sometime during February 1989.

## II

■ The appellant's court-martial was held at Howard Air Force Base, Panama. A female acquaintance of the appellant was called by the defense. She was not fluent in English, and an interpreter was used. Before the testimony began, the military judge called an Article 39(a), UCMJ, session during which the interpreter was qualified and sworn. The judge reminded counsel for both sides about the proper use of an interpreter and, after a short delay, the witness was called. After the second question, a court member asked, "Excuse me. Could she speak a little bit louder? I would like to listen to her version when she speaks in spanish (sic)." The judge responded:

[W]e are utilizing the interpreter in here, and the testimony of the witness must come from the interpreter. And I do realize that you may be fluent in the language, too, but the testimony of this

witness is coming before the court through the interpreter. And please do, though, ask our witness to speak up.

This was the last mention of any question concerning the interpreter, and the witness completed her testimony with no further questions or interruptions from the court members.

Now the appellant invites our attention to the "apparent reliance by a court member on his own knowledge of Spanish, ignoring the translator." We find no merit in this assertion. In the first place, other than the initial request for the witness to speak up, there is no indication that the court member was ignoring the interpreter's translation. However, assuming that he was augmenting the interpreter's work with his own understanding of the language the witness was speaking, we see no error or prejudice to the appellant.

The most basic reason for our holding is found in Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2), which states:

When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament.

As in the recent case of *United States v. Allen*, 29 M.J. 1002 (A.F.C.M.R.1990), we are reluctant to disqualify court members because of specialized knowledge. In the present case, the knowledge was of the witness' native tongue. In other cases, the specialized knowledge may be of the particular area of maintenance or operations involved. This knowledge may allow the court members to understand jargon that would otherwise have to be explained in great detail. If the court members already understand the workings of a mess hall, or a machine shop, or a jet engine they will be able to evaluate the case more accurately than if all these concepts are new. This is why education, training, and experience are listed in Article 25, UCMJ, as qualifying traits.

There are not many military cases on use of interpreters, and none that we can find

which address the present issue directly. Most of the cases that do exist are concerned with the competence of the interpreter. The main case in this area is *United States v. Rayas*, 6 U.S.C.M.A. 479, 20 C.M.R. 195 (1955). The Court stated what we have found still to be true:

The problem before us is one of limited appearance, and the casebooks yield but few instances of value to us here—and none of recent origin. However, a clear pattern—with which we are not out of accord—is established by the infrequent precedents, and this is supported by the analytical writings of scholars and commentators. Essentially, an interpreter is a witness, and one whose conduct must be subjected to the most careful scrutiny. [citations omitted]. The accuracy of his translation of testimonial questions and answers is in the nature of a question of fact for the jury and may, therefore, be the subject of impeachment. [citations omitted]. This right to challenge translative accuracy may be exercised either through cross-examination of the interpreter, or by means of calling other witnesses to test the interpretation. [citations omitted].

Having court members who are able to evaluate the competence of the translator does not violate the accused's right to a fair trial. If anything, it helps guarantee it. R.C.M. 502(f) seems to anticipate that any person, including a court member, may discover and report disqualification or lack of qualification of an interpreter. It states:

Action upon discovery of disqualification or lack of qualifications. Any person who discovers that a person detailed to a court-martial is disqualified or lacks the qualifications specified by this rule shall cause a report of the matter to be made before the court-martial is first in session to the convening authority or, if discovered later, to the military judge.

There was no error or prejudice in the court member's request to be able to hear the witness testify.

### III

We find no merit in the appellant's assertion that the trial counsel's use of a New

York bar association book during sentencing argument was improper.

Because we have modified the findings of guilty, we must now reassess the sentence. We are confident that the approved sentence remains appropriate. However, we cannot be sure it is the sentence the members would have adjudged if they had found him guilty of a one-time use of cocaine, as we have. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986); *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990). Accordingly, we set aside the sentence and return the record of trial to The Judge Advocate General for return to a convening authority who may order a rehearing on the sentence.

Senior Judge FORAY and Judge LEONARD concur.